390 So.2d 422 (1980)
Paul BELLAVANCE, a Minor, by and through His Father and Next Friend, Norman Bellavance, and Norman Bellavance, Individually, Appellants,
v.
The STATE of Florida, D/B/a the Northeast Florida State Hospital, Appellee.
No. SS-98.
District Court of Appeal of Florida, First District.
November 13, 1980.
Rehearing Denied December 15, 1980.
*423 Mary Friedman and Bill Hoppe of Colson & Hicks, Miami, for appellants.
Thomas F. Woods of Woods, Johnston & Erwin, Tallahassee, for appellee.
LILES, WOODIE A., Associate Judge (Retired).
Plaintiffs, Paul and Norman Bellavance, appeal from a final summary judgment entered for the defendant, State of Florida, d/b/a Northeast Florida State Hospital (State). The gravamen of Paul Bellavance's claim is that, "the defendant, State of Florida, acting by and through its agent, Dr. Roberto Simon, negligently released patient Gary Riccardelli before he was sufficiently treated and cured," and that as a result of such negligence, Paul was injured. Norman Bellavance's claim is that, as a result of the injuries sustained by his son due to the State's negligence in prematurely releasing Riccardelli, he has incurred substantial medical expenses and will lose the services of his minor son. The patient, Gary Riccardelli, had been involuntarily committed to the Northeast Florida State Hospital under The Baker Act, Section 394.451 et seq., Florida Statutes, immediately following his release from prison. The trial court ruled that the act complained of falls within the area of discretion for which sovereign immunity remains and so entered the subject final summary judgment. The sufficiency of the allegations of negligence and causation are not before us. We therefore assume but do not decide that the complaint states a cause of action.
In the recent landmark case, Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), the Florida Supreme Court redefined the waiver of sovereign immunity under Section 768.28, Florida Statutes. As a tool in identifying those certain "discretionary" governmental functions which remain immune from tort liability, the Court cited approvingly the case-by-case analysis set forth in Johnson v. State, 69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968), which distinguishes between the "planning" and "operational" levels of decision-making by government agencies. In pursuance of this case-by-case method of proceeding, the Court also commended the utilization of the following four-pronged preliminary test set forth in Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965):
(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to make the challenged act, omission, or decision? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom. *424 If, however, one or more of the questions call for or suggest a negative answer, then further inquiry may well become necessary, depending upon the facts and circumstances involved. Id., at 445.
Commercial Carrier Corp. v. Indian River County, at 1019. Application of the above test to the instant situation quickly reveals that questions (1) and (4) can be answered in the affirmative. Undeniably, the act of releasing a mental patient involves a basic governmental policy as set forth in The Baker Act, i.e., to seek the least restrictive means of intervention and treatment for the particular mental patient. Sections 394.453 and 394.459(2)(b), Florida Statutes. It is equally clear that Section 394.469(1) and (2), Florida Statutes, provides, within certain limitations, the requisite statutory authority for the Northeast Florida State Hospital to release a mentally ill patient.
We are unable, however, to answer questions (2) and (3) in the affirmative. Paraphrased to the instant situation, we must ask: Is the act of releasing Riccardelli essential to the realization or accomplishment of The Baker Act policy of insuring the least restrictive means of intervention and treatment for mentally ill patients, or is it one which would not change the course or direction of that policy? We think that it is the latter, for we are hard pressed to see how the act of releasing, or for that matter not releasing, Riccardelli would materially affect the ends and purposes of The Baker Act. Further, it is a specific individual act which simply does not rise to the character of a "basic policy evaluation" as suggested by question (3). In Johnson v. State, supra, the California Supreme Court opined:
"... although a basic policy decision (such as standards for parole) may be discretionary and hence warrant governmental immunity, subsequent ministerial actions in the implementation of that basic decision still must face case-by-case adjudication on the question of negligence." Id., 73 Cal. Rptr., at 250, 447 P.2d, at 362.
Similarly, while the State's standards for releasing mental patients may be discretionary and thus immune from review, the subsequent ministerial action of releasing Riccardelli pursuant to those standards does not achieve the status of a "basic policy evaluation." Accordingly, a further inquiry must be made into additional factors and considerations: i.e., "the importance to the public of the function involved, the extent to which government's liability might impair free exercise of the function, and the availability to individuals affected of remedies other than tort suits for damages." Lipman v. Brisbane Elementary School District, 55 Cal.2d 224, 230, 11 Cal. Rptr. 97, 99, 359 P.2d 465, 467 (1961), cited approvingly in Johnson v. State, supra and Commercial Carrier Corp. v. Indian River County, supra. An additional consideration is also suggested by Johnson v. State:
"... to be entitled to immunity, the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in `discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." Ibid., Footnote 8, pp. 794-795, 73 Cal. Rptr. p. 249, 447 P.2d p. 361.[1]
There is a vital public interest in securing the earliest possible release and subsequent return to society of persons afflicted with mental illness, and it may well be argued that to subject the State to liability for the negligent release of these people will have a chilling effect upon the administration of programs such as that offered by the Northeast Florida State Hospital. However, this potential chilling effect is significantly mitigated by the provisions of Section 768.28(9):

*425 "No officer, employee, or agent of the state or its subdivisions shall be held personally liable in tort for a final judgment which has been rendered against him for any injuries or damages suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." (Emphasis supplied)
Clearly, it is only under a most exacting standard that State employees may be subjected to ultimate personal liability.
We also doubt that the potential liability of the State itself will be a significant inhibitor to the exercise of professional judgment by the personnel involved. Indeed, some inhibiting effect may well be healthy, for it should not be forgotten that the State's employees serve the needs of society as a whole as well as the needs of individual persons. Further, we cannot envisage any remedy, other than a tort suit for damages, to which the Bellavances can resort.
The sparse record before this Court also indicates that Riccardelli had a long and troubled history of fights and other violent acts while in prison. During the approximately two months of his stay at the Northeast Florida State Hospital, he attempted to escape on two occasions. Further, he was released from the Hospital on December 25, 1976, this despite being subject to "homicidal precautions" by the staff as recently as December 10, 1976. These and other factors could reasonably suggest to the judge and jury that the State, by and through its employees, did not render a considered decision in releasing Riccardelli. The State may yet show that it did do so, and the record itself hints of factors in explanation or mitigation of the above. However, such a showing was not made and could not have been made by the State at the summary judgment stage of the trial court's proceedings. Elton v. County of Orange, 3 Cal. App.3d 1053, 84 Cal. Rptr. 27, 31 (1970). On the contrary, such matters are factual issues more suitably governed by appropriate jury instructions than by standards for summary judgment.
In sum, the equities of the instant factual situation do not present a compelling justification for the invocation of sovereign immunity. The specific, individual act of releasing Riccardelli simply does not rise to the level of "basic policy decisions" which call for judicial restraint. Further, the State has not demonstrated that the personnel involved, after consciously balancing risks and advantages, made a considered decision in releasing Riccardelli. Therefore, we think that this cause must be heard on its merits.
REVERSED AND REMANDED for proceedings not inconsistent with this opinion.
ROBERT P. SMITH, Jr., J., concurs.
BOOTH, J., concurs in part, dissents in part with opinion.
BOOTH, Judge, concurring in part, dissenting in part:
I agree with the majority that questions (1) and (4) of the sovereign immunity test of Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965), as adopted by Commercial Carrier Corporation v. Indian River Company, 371 So.2d 1010 (Fla. 1979), is satisfied under the facts here. I do not agree that questions (2) and (3) are not also satisfied. The release of a mental patient is an act requiring both expertise and the exercise of discretion. The act itself, and its accomplishment as a matter of expertise and judgment, is essential to the realization of the basic policy set forth in the Baker Act.
The Evangelical case itself supports this interpretation of the rule. In that case, the plaintiff sought recovery for damages by fires set by an escaped juvenile, contending that the State was negligent, inter alia,[1] in *426 (1) maintaining the "open program" at the Juvenile Detention Center, and (2) in assigning the boy in question to the open program. In reversing for dismissal of the complaint, the Supreme Court of Washington held (407 P.2d at 446):
[T]he establishment and maintenance of an overall and individual training and security program within a correctional facility ... consistent with the adopted policy and objectives of the state's delinquent youth program, necessarily require that a proper balance be struck between therapy and security. To this end, it calls into play the exercise of executive expertise, evaluation and judgment in an area involving many variable human, emotional, and psychological factors and about which widely divergent opinions can and do exist. The decisions required are not unlike those called for in the legislative and judicial process of government. Indeed, we have held that an administrative decision to parole an inmate from a mental hospital embraces the exercise of discretion which is quasi-judicial in character. Emery v. Littlejohn, 83 Wash. 334, 145 P. 423 (1915). To now hold, under existing legislation, that the exercise of the executive and administrative discretion involved in plaintiffs' first two contentions is subject to regulation and control by the media of damage actions would do naught but stifle the basic government process and policy.

We conclude that, as applied to these contentions of plaintiffs, the four questions heretofore posed clearly and unequivocally demand affirmative answers. (e.s.)
The court in Evangelical, supra, cites with approval the holding in Emery v. Littlejohn, 83 Wash. 334, 145 P. 423, 426 (1915), wherein the court held:
We are of the opinion that the power of absolute discharge of [mental] patients from the hospital includes the power to parole or conditionally discharge patients therefrom, and that all acts of the superintendent under this power involve the exercise of discretion on his part of a quasi judicial character.
The acts of Dr. Calhoun, here complained of, being official, and calling for the exercise of his discretion, the law seems to be settled beyond controversy that he cannot be called to account for any consequences flowing therefrom, in a civil action for damages instituted by a person claiming to be injured as the result of such discretionary action in the absence of malicious or corrupt action.
The determination that a mental patient is to be released is the ultimate judgmental function of the agency charged with that responsibility, for which sovereign immunity applies.
The judgment below should be affirmed in its entirety.
NOTES
[1] This holding in Johnson v. State was predicated upon an express statutory exception in the California statute regarding discretionary functions. Cal.Gov.Code, § 820.2. Inasmuch as the Florida Supreme Court has grafted such an exception into Section 768.28 [Commercial Carrier Corp. v. Indian River County, at 1020, 1022], we think the cited passage instructive to the instant case.
[1] The other two contentions of the plaintiff in the Evangelical case were that the State was negligent in assigning the boy to the boiler room detail in the institution and in failing to notify local law enforcement agencies of his escape. The court found that these were "operational, ministerial or housekeeping functions," for which suit would lie, but concluded that the record failed to establish negligence.