423 So.2d 911 (1982)
TRIANON PARK CONDOMINIUM ASSOCIATION, INC., a Florida Not-for-Profit Corporation, Appellant,
v.
CITY OF HIALEAH, a Municipal Corporation, Appellee.
CITY OF HIALEAH, ETC., Appellant,
v.
TRIANON PARK CONDOMINIUM ASSOCIATION, INC., etc., aPPELLEE.
Nos. 81-1626, 81-1634.
District Court of Appeal of Florida, Third District.
August 10, 1982.
On Rehearing January 11, 1983.
Becker, Poliakoff & Streitfeld and Alan E. Tannenbaum, Fort Lauderdale, for appellant/appellee, Trianon Park Condominium Ass'n, Inc.
Ralph F. Miles, Robert J. Stampfl, Hialeah, Claudia B. Greenberg and Richard H.W. Maloy, Coral Gables, Holland & Knight and Chesterfield Smith and Marty Steinberg and Andrea Simonton, Miami, for appellee/appellant, City of Hialeah.
Before HENDRY and DANIEL S. PEARSON, JJ., and MELVIN, WOODROW M. (Ret.), Associate Judge.
HENDRY, Judge.
These consolidated appeals arise from a final judgment entered upon a jury verdict in favor of the Condominium Association (Association), plaintiff below, in a negligence action against the City of Hialeah (City) for acts and omissions relating to inspection and certification of construction of the condominium building.
A pretrial stipulation between the Association and the City set forth the following agreed facts: the City of Hialeah adopted the South Florida Building Code (Code) in 1958; the Association is a non-profit corporation created to operate the condominium comprised of sixty-five units; the original developer of the condominium applied for a *912 building permit in 1972 and the City later approved the application in the name of a new developer; work on the original plans was abandoned; in November, 1975, Flagship National Bank succeeded in interest as the owner of the condominium; revised plans dated August, 1975, were submitted and construction was re-started in November, 1975, and continued until July, 1976, during which time City's building inspectors made mandatory inspections required by Code; in July, 1976, the City issued a certificate of occupancy, and in April, 1979, after a rainstorm, the roof of the building fell in resulting in damage to the interiors of forty-nine units; the City was given notice of the existence of certain construction defects and deficiencies.
The Association filed a complaint in 1979, alleging three counts against Flagship for breach of warranty, negligence and strict liability, and one count against the City for negligence in the "operational" function of approving plans, inspecting construction for compliance with plans and with the Code, and issuing the certificate of occupancy. Prior to trial, the Association settled with Flagship for $153,000. The court approved the settlement and certified the unit owners as a class under Florida Rule of Civil Procedure 1.220,[1] for purposes of maintaining a class action.
At trial, the Association presented evidence of damages, including roof defects, structural flaws in unit entrance alcoves, excessive combustibility of exterior walls, deficient fire resistivity of separation between garage and living units, defective expansion joint construction, a combustible roof hatch and other significant defects and deficiencies in construction. Further evidence was presented showing that each of the defects for which damage was claimed was in violation of the Code and/or building plans. Evidence was also presented regarding the purposes and requirements of the Code and duties of building officials thereunder. Proof of negligence related to the City's failure to properly enforce Code requirements regarding the above-listed construction defects and others, and allowing deviations from building plans.
The jury returned a verdict for the Association in the amount of $290,938.84, against which the trial court set off $153,000 for the Flagship settlement. Judgment was then entered pursuant to section 768.28, Florida Statutes (1975), which provides for the waiver of sovereign immunity by the state, its agencies and subdivisions in tort actions, and the remaining sum of $137,938.84 was reduced to $50,000 in accordance with section 768.28(5). The City appeals the final judgment of liability and the Association, in turn, appeals reduction of the judgment to $50,000.
The City's appeal addresses the issue of the scope of sovereign immunity of a municipality. The City's primary contention is that the acts or omissions alleged in the complaint are "planning" functions for which it is immune from tort liability.
In the landmark case, Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), the Florida Supreme Court analyzed the extent to which section 768.28, Florida Statutes (1975) eliminated sovereign immunity for governmental entities. Despite the lack of an express exception in the statute, the court concluded that certain planning or policy making governmental functions, unlike purely operational functions, could not be the subject of traditional tort liability. The Court approved a case-by-case analysis to distinguish between the "planning" and "operational" levels of decision-making by government agencies, and set forth a four-pronged test for determining which category a particular act or decision fell into:
(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?
(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?

*913 (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?
(4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to make the challenged act, omission, or decision? ...
Commercial Carrier Corp. v. Indian River County, supra, at 1019. If all four questions are answered in the affirmative the act may be classified as a discretionary planning-level function and non-tortious. Where one or more questions call for a negative answer, however, further inquiry may be necessary.
Application of the above test to the instant case reveals that questions (1) and (4) can easily be answered in the affirmative. The act of inspection and certification of city buildings is a basic governmental policy which the City has the lawful authority to undertake pursuant to ordinance. We find, however, that the City's actions do not satisfy the second and third elements of the test. Inspections, plan reviews and certification for this particular condominium did not change the overall direction or policy of the general program of building inspection in the city. See Bellavance v. State, 390 So.2d 422 (Fla. 1st DCA 1980), petition for review denied, 399 So.2d 1145 (Fla. 1981). Similarly, we find that the City's enforcement of the established Code standards is a purely ministerial action which does not rise to the status of basic policy evaluation since the majority of the inspectors' acts involve simple measurement and enforcement of the building code as written rather than the exercise of discretion and expertise. See Jones v. City of Longwood, Florida, 404 So.2d 1083 (Fla. 5th DCA 1981).
Although the initial determination by the City to inspect and certify construction within its boundaries is a "planning" decision, the subsequent performance of inspection, plan review and certification is clearly an "operational" level activity implementing that policy.[2] Once the City undertook to inspect, review and certify construction, it was obligated to do so reasonably and responsibly in accordance with acceptable standards of care: "[I]mmunity of a government for negligently performing an act no longer exists, even though the initial decision to act may have been purely discretionary, and not compelled in any way." Collom v. City of St. Petersburg, 400 So.2d 507, 508 (Fla. 2d DCA 1981) (emphasis in original). Consequently, the City's inspection and certification of buildings within its borders is an operational level activity, for which it may be subject to tort liability under section 768.28, Florida Statutes. We have also carefully considered the City's remaining points and find them to be without merit.
*914 We now turn to the sole issue raised on appeal by the Association. The Association argues that as representative of the class of sixty-five persons (unit owners) it was entitled to entry of the $100,000 "per incident" level of recovery under section 768.28(5), rather than the $50,000 "per person" level of recovery.
Section 768.28(5), Florida Statutes (1975), provides in pertinent part:
(5) The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period prior to judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $50,000, or any claim or judgment, or portions thereof, which when totaled with all other claims or judgments paid by the state arising out of the same incident or occurrence, exceeds the sum of $100,000....[3] (emphasis supplied)
Essentially, the Association argues that members of a plaintiff class in a class action should be considered separate persons for purposes of determining the extent of a municipality's liability to pay a judgment under section 768.28(5), Florida Statutes.
Although this precise issue appears to be one of first impression in this state, we agree with the Association that the "per incident" level of recovery rather than the "per person" level should apply. As the Association points out, each unit owner was individually damaged by the City's negligence and could have maintained an independent action against the City, in which case the City would have been liable up to the "per incident" level of judgment for the total aggregate of the claims. See generally Tenney v. City of Miami Beach, 152 Fla. 126, 11 So.2d 188 (1942); Rumbough v. City of Tampa, 403 So.2d 1139 (Fla. 2d DCA 1981) (city's payment of $100,000 to surrounding residents in settlement of claims and lawsuits for damages caused by city's operation of a sanitary landfill, constituting a single act or occurrence under section 768.28(5), extinguished city's liability).
In summary, we hold that the City's building inspection and certification activities are operational functions, the negligent performance of which made it liable in tort. We also hold that the trial court erred in reducing the final judgment to $50,000 rather than $100,000 under section 768.28(5), Florida Statutes (1975).
Accordingly, we affirm the judgment below insofar as it found the City liable for negligence in inspecting and certifying the condominium, but reverse the amount of the judgment and remand to the trial court with instructions to enter a final judgment in favor of the Association in the amount of $100,000.
Affirmed in part, reversed in part, remanded with instructions.

ON MOTION FOR REHEARING
Before HENDRY and DANIEL S. PEARSON, JJ., and MELVIN, WOODROW M. (Ret.), Associate Judge.
PER CURIAM.
Counsel for appellee/appellant City of Hialeah having filed in this cause a motion for rehearing and suggestion of certification, and same having been considered by the court which determined the cause, it is ordered that the motion for rehearing be and it is hereby denied. We adhere to our original opinion as issued; however, we grant in part the suggestion for certification and certify to the Florida Supreme Court the following question of great public importance:
Whether, under Section 768.28, Florida Statutes (1975), as construed in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), a municipality retains its sovereign immunity from a suit predicating liability solely upon the allegedly negligent inspection of a building, *915 where that municipality played no part in the actual construction of the building.
NOTES
[1] Now Fla.R.Civ.P. 1.221.
[2] See White v. County of Palm Beach, 404 So.2d 123 (Fla. 4th DCA 1981) (decision to build new jail is planning activity; actual functioning of jail is operational activity for which tort liability may attach); Mathews v. City of St. Petersburg, 400 So.2d 841 (Fla. 2d DCA 1981) (decision to alter natural state of creek through park planning function; actual alteration operational function); Collom v. City of St. Petersburg, 400 So.2d 507 (Fla. 2d DCA 1981) (decision to alleviate storm drainage problem planning function; design, installation and maintenance of storm sewer is operational function); Hollis v. School Board of Leon County, 384 So.2d 661 (Fla. 1st DCA 1980) (decision to train school bus drivers and inspect school buses planning function; actual training and inspection operational functions); Ferla v. Metropolitan Dade County, 374 So.2d 64 (Fla. 3d DCA 1979), cert. denied, 385 So.2d 759 (Fla. 1980) (decision to install median strip on causeway planning function; actual design and installation operational activity); compare Elliott v. City of Hollywood, 399 So.2d 507 (Fla. 4th DCA 1981) (decision not to enforce ordinance preventing homeowners from growing bushes which interfere with vision of motorists basic governmental policy); Jenkins v. City of Miami Beach, 389 So.2d 1195 (Fla. 3d DCA 1980) (decision not to provide park supervision at night planning decision); Ellmer v. City of St. Petersburg, 378 So.2d 825 (Fla. 2d DCA 1979) (decision to remove police from potential riot area planning decision); Weston v. State, 373 So.2d 701 (Fla. 1st DCA 1979) (state attorney's advice to grand jury with respect to whether indictment could be brought against person under certain statute qualified as a discretionary governmental function).
[3] In 1981 the Legislature increased the amount recoverable against the state, a county, or a municipality to $100,000 per person and $200,000 per incident. See ch. 81-317, Laws of Fla.