466 So.2d 259 (1985)
Christopher CARANNA and Judy Anne Caranna, Appellants,
v.
William R. EADES, Jr., Appellee.
CITY OF CLEARWATER, Appellant,
v.
Christopher CARANNA and Judy Anne Caranna, Appellees.
W.B. JOHNSON PROPERTIES, INC., United States Fire Insurance Company, Equitable Life Assurance Society, and Hyprops D/B/a Equital, a Georgia General Partnership, Hyprops, a Georgia Partnership, W.B. Johnson, Frank L. Flautt, Jr., Robert E. Jones, Frank C. Harrelson, Jr., A. Douglas McGarrity and Fred V. Alias, Individually and As Partners in Hyprops, W.B. Johnson, Individually, and Holiday Inns, Inc., Appellants,
v.
Christopher CARANNA and Judy Anne Caranna, Appellees.
Nos. 83-1636, 83-2093, 83-2060 and 83-2557.
District Court of Appeal of Florida, Second District.
February 8, 1985.
Rehearings Denied March 27, 1985.
*261 Stevan T. Northcutt of Levine, Freedman, Hirsch & Levinson, P.A., Tampa, for the Carannas.
James C. Hadaway and William F. Rutger of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Clearwater, for appellee Eades.
Gary M. Witters of Allen, Dell, Frank & Trinkle, Tampa, for appellant City of Clearwater.
Thomas J. Roehn of Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, for appellants W.B. Johnson Properties, Inc.
CAMPBELL, Judge.
This case involves several consolidated appeals stemming from multiple party litigation over seventeen-month-old Christopher Caranna's fall from a six-story hotel balcony.
Christopher and his mother, Judy Anne, sued a number of persons and entities to recover for the child's injuries and the mother's derivative claims for past and future medical expenses during the minority of the child. Eventually, by virtue of a number of amendments, third party complaints, counterclaims and cross-claims, the field of defendants was greatly expanded. Among them were William R. Eades, Jr., the hotel architect (hereinafter referred to as Architect); the City of Clearwater (hereinafter referred to as the City); W.B. Johnson; Frank L. Flautt, Jr.; Robert E. Jones; Frank C. Harrelson, Jr.; A. Douglas McGarrity and Fred V. Alias, individually, and as partners doing business as Hyprops, a Georgia general partnership, and Equitable Life Assurance Society, a foreign corporation, and Hyprops, a Georgia general partnership, individually, and doing business as Equitel, a Georgia general partnership; W.B. Johnson Properties, Inc.; and United States Fire Insurance Company (hereinafter referred to as the Innkeepers); and Holiday Inns, Inc. (hereinafter referred to as Franchisor).
The City, Innkeepers and Franchisor appeal from the final judgment and certain post-trial orders entered after a jury verdict. The Carannas appeal from a summary final judgment in favor of the Architect. All appeals have been consolidated, however, we will address each appeal separately following the numerical order of each appeal by its appellate case number.
The appeal in case number 83-1636 is by both Christopher and his mother from the summary final judgment entered against them on their claims against the Architect, appellee Eades. We find that the depositions and other documents in support of appellee Eades' motion for summary judgment clearly establish no justiciable issue of law or fact. We, therefore, affirm the summary final judgment for appellee Eades.
The appeal in case number 83-2060 is by the appellants Innkeepers and Franchisor from the final judgment after jury verdict entered against them in the mother's derivative action for medical expenses. Prior to the jury verdict, the Innkeepers and Franchisor had settled Christopher's action against them wherein, among other things, *262 each party agreed to pay their own costs incurred.
The appeal in case number 83-2093 is by the appellant City from the judgments entered against it, both in regard to Christopher's claim and his mother's claims.
The appeal in case number 83-2557 is by the appellant Innkeepers and Franchisor from the costs judgment entered against them in regard to Mrs. Caranna's derivative actions.
The jury, in returning its verdict against the Innkeepers, Franchisor and the City, had found Christopher Caranna's total damages to be $400,000.00. The Innkeepers and Franchisor had, as heretofore noted, settled Christopher's claims against them prior to the jury verdict. The mother's total derivative action damages against all parties for past medical expenses were determined to be $42,000.00, and damages for future medical expenses during Christopher's minority to be another $42,000.00. The mother was determined to be seventy-five percent at fault for her damages. The trial court therefore reduced her award for past medical expenses from $42,000.00 to $10,500.00. The trial court refused to reduce her future medical expenses "pursuant to the stipulation of counsel and the specific assignment of these benefits ... to a court-appointed guardian for the purposes of administering said sums for the benefit of Christopher Caranna, a minor." The City and the Innkeepers dispute the trial judge's finding of a stipulation of counsel as to future medical expenses and argue that they only agreed that there would be a separate space on the jury verdict form for the jury to determine separately the mother's derivative action for past and future medical expenses until the child reaches eighteen.
The judgments in favor of Christopher and Mrs. Caranna against the City were subsequently limited to a maximum of $50,000.00 each, due to the limitations of section 768.28, Florida Statutes (1977).
The child made a motion to tax costs against the Innkeepers, the Franchisor and the City. Inasmuch as they had settled with the child during the trial and the terms of the settlement provided that each party would bear its own costs, the Innkeepers and Franchisor objected to the motion. Subsequently, the Carannas jointly filed an amended motion to tax costs to recover all of the costs incurred by the child as the mother's costs. The Innkeepers and Franchisor also objected to this motion.
The mother and child had filed their joint complaint on October 13, 1977. The mother, however, was not a party to this action during the time from August 3, 1979, when she filed a notice of voluntary dismissal, until April 24, 1981, when she filed her third party counterclaim.
The facts are the same for all appeals and they show that on July 30, 1977, the Caranna child fell from the balcony of Room 600 of the Holiday Inn on Clearwater Beach. The hotel was owned and operated by the Innkeepers as franchisees of the Franchisor.
Room 600 is located on the northwest corner of the sixth floor of the building and has a balcony as do the other rooms in the hotel. The balcony to Room 600 is enclosed by a railing with pre-cast concrete vertical dividers on its north, west and south sides. The east side of the balcony opens through sliding glass doors into Room 600. The north and west railings of the balcony separates the balcony from the open space to the ground. The railing on the south side separates the balcony of Room 600 from the balcony of the adjoining room. The balcony railing contains several openings between the vertical dividers on all sides.
There were no witnesses to the child's fall except the mother. According to her testimony, she carried the child outside and placed him on the floor of the balcony. The child ran through the concrete dividers in the railing on the south side of the balcony onto the balcony of the adjoining room. She then climbed over the railing, picked up the child and placed him back on the balcony of Room 600. According to the *263 mother, the child then ran to the opening between the wall of the building and the first concrete divider in the balcony railing on the north end of the balcony of Room 600. The mother testified that the child was standing sideways in that opening at an angle and as she tried to reach him and call him back, he stepped through the opening and fell to the roof of the canopy over the driveway entrance to the Holiday Inn.
The focal point of the negligence alleged against all of the parties defendant was that the spaces between the vertical concrete divider panels of the railings on the north side of the balcony of Room 600, through which Christopher fell, were excessively wide as they were designed, constructed and maintained.
The trial court, in granting the Architect's motion for summary judgment, found that the spaces were designed to be six inches wide. We find the trial judge correct in that finding. The scale of the plans prepared by the Architect clearly call for six-inch openings.
At the summary judgment hearing, it was established that six-inch openings were within applicable building code limitations all over the country. Depositions of experts, filed at the time of the hearing, indicated that six inches was a safe distance. The Southern Standard Building Code, 1969 Edition, which had been adopted as a standard by the City of Clearwater, required openings between guardrails on balconies not to exceed eight inches. Therefore, as we have previously indicated, we affirm the summary judgment for the Architect in case number 83-1636.
The actual measurements of the space between the northwest corner (the outer edge) of the balcony and the first vertical panel on the north and outer railing of Room 600's balcony, as it was constructed, ranged in width from 5 3/16 inches to 5 5/16 inches. The middle opening between the first and second vertical panels ranged in width from six to 6 1/8 inches. The width of the space between the second vertical panel and the east wall of the balcony through which the child fell, ranged from 8 3/16 inches to 8 5/16 inches.
Mr. Eades, the Architect, testified, and the plans verify, that the design was to have the panels spaced evenly and no more than six inches apart. The record is clear that, except in isolated instances, the panels were installed in conformance with the six-inch requirement.
The incident in which Christopher was injured occurred on the morning of July 30, 1977, just before the Carannas were to check out of the hotel. Mrs. Caranna testified that on the morning of July 27, just after they checked into Room 600, she took Christopher onto the balcony and put his head up to the openings on the west front of the balcony. She testified she did this to check to see if his head could go through. Those spaces were too small for his head to go through, so she concluded he could not slip through them. The evidence showed those openings on the west front of the balcony all to have been six inches wide, as called for by the Architect's plans. The openings between the vertical dividers on that portion of the balcony railing that separated Room 600 from Room 602, immediately to its south, varied between 7 1/2 inches to 7 3/4 inches.
In appeal 83-2060, there are separate issues raised by appellants Innkeepers and Franchisor. This appeal (83-2060) only involves the judgments on Mrs. Caranna's derivative action because, as we have several times noted, the two appellants here had settled Christopher's claims. The appellant Franchisor (Holiday Inns, Inc.) appeals the trial court's denial of its motion for a directed verdict. It is clear from the record that the trial court considered that the issue raised by that motion for directed verdict "should be reconciled as a matter of law on the facts before it... ." Ultimately, the trial judge, being persuaded by an apparent misinterpretation of Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491 (Fla. 1983), denied the motion on the basis of an apparent agency between the Innkeepers and the Franchisor. We are of the opinion the trial judge was in error in finding *264 on the state of facts as existed, that the jury could determine the Franchisor to be liable to Mrs. Caranna.
Appellee, Mrs. Caranna, seems to argue that an apparent agency as set forth in Robbins, can be established that renders the principal liable for acts of its agent regardless of any proof of reliance by the injured party upon the principal. We do not agree with that interpretation. Robbins sets out "three elements needed to establish apparent agency,"[1] and holds that liability, in apparent agency cases, arises only when the three elements are established. In this case, there is absolutely no evidence in the record to establish the element of reliance by Mrs. Caranna on Holiday Inns being the principal in an actual or apparent agency situation. The supreme court in Robbins affirmed the decision of the district court there, by stating, "The district court also correctly pointed out the sufficiency of Robbin's [sic] evidence regarding her reliance on HJ." Since the record before us, and the trial court, is devoid of any such evidence on the part of Mrs. Caranna, the trial judge erred in failing to direct a verdict for the appellant Franchisor, Holiday Inns, Inc. We therefore reverse the trial judge on that point and, on remand, we direct entry of a directed verdict for Holiday Inns, Inc. in regard to all of the judgments and orders growing out of Mrs. Caranna's derivative actions.
The appellant Innkeepers, in appeal 83-2060, appeal the trial court's refusal to reduce Mrs. Caranna's award for future medical expenses during Christopher's minority by the percentage of her comparative negligence. We agree that the trial court erred in failing to so reduce Mrs. Caranna's award of future medical expenses. The trial judge stated two reasons for his decision not to reduce the award. His first reason was that he concluded that there was a stipulation of counsel whereby it was agreed not to reduce the future medical expense award. From the record before us, his conclusion was in error. The record clearly indicates that the only agreement between counsel was that the verdict form would contain a separate finding by the jury as to the amount of future medical expenses that Mrs. Caranna would be entitled to for Christopher's minority.
The second reason stated by the trial judge in the final judgment for not reducing Mrs. Caranna's future medical expense award was because she had agreed to assign any amounts she received for future medical expenses to a court-appointed guardian. That reason must also fail. Mrs. Caranna could not assign any more than she was legally entitled to receive. Mrs. Caranna's action was a derivative action in her own right. It was not Christopher's action. Wilkie v. Roberts, 109 So. 225 (Fla. 1926); Ward v. Baskin, 94 So.2d 859 (Fla. 1957); City Stores Company v. Langer, 308 So.2d 621 (Fla. 3d DCA 1975). It is basic to the doctrine of comparative negligence that where a plaintiff and defendant are both at fault, a plaintiff may recover, but only so much of the entire damages plaintiff sustained as the defendant's negligence bears to the combined negligence of both the plaintiff and defendant. Hoffman v. Jones, 280 So.2d 431, 438 (Fla. 1973).
Since Hoffman v. Jones, the legislature has adopted section 768.31, Florida Statutes (1977), the "Uniform Contribution Among Tort-feasors Act." In addition to the issue of comparative negligence, under section 768.31, if Mrs. Caranna had attempted to assign her right of action rather than her judgment, or if the action had been brought by some third party, if possible, for Christopher's future medical expenses during his minority, appellants in this appeal would have been entitled to contribution from Mrs. Caranna for the percentage of her negligence.
The trial judge was partially persuaded to refuse to reduce Mrs. Caranna's damages by appellee's reliance on Acevedo v. Acosta, 296 So.2d 526 (Fla. 3d DCA 1974). *265 That case illustrates the possibility of inequities that might arise in awarding damages in parents' derivative actions, but it does not affect the law clearly applicable under the factual circumstances in this appeal.
In Acevedo, the action was brought by the father for his expenses for the injury to his child. The child was injured in an automobile accident. The child's mother was driving the car and was determined to be twenty-five percent negligent. Though the father was the owner of the vehicle, he was not in the car at the time of the accident and was not comparatively negligent. The court held that the father's derivative action damages should not be reduced by the amount of the wife-mother's negligence. We believe the Acevedo court was correct, under those facts, and in relying on Ward v. Baskin, which states the Florida rule that negligence of a wife is not imputed to the husband simply because of the marital relationship. So, in this case, if someone other than the negligent mother had been the plaintiff in the derivative action for the child's future medical expenses, the damages for such expenses should not be reduced. While that may seem inequitable, it is clearly the law. As the court in Acevedo pointed out:
We think that the governing analogy is that if the child were of age, he could have recovered for his own medical expenses without diminution by comparative negligence because the driver's negligence would not have been imputed to him. We therefore hold that the trial court correctly determined that the father's claim for medical expenses for the treatment of his son for injuries sustained in the accident is not reduced by the comparative negligence of the driver. This holding is not changed by the fact that the driver was the minor's mother and the wife of the plaintiff, Justo Acosta.
The seeming inequity arises because in this case, it is the negligent parent's derivative action. While the damages are awarded for the child's future medical expenses during his minority, it is still the action of the negligent parent plaintiff and under the doctrine of comparative negligence, the damages must be reduced by the amount of her negligence. See Joseph v. Quest, 414 So.2d 1063 (Fla. 1982). This apparent inequity was suggested and rejected, as we must, in Dixon v. Wright, 214 So.2d 787 (Fla. 4th DCA 1968). In that case, a husband's derivative claims for his wife's injuries were held barred by the husband's contributory negligence. The Dixon court, in holding the claims barred, observed:
We do not propose that this rule is necessarily the best rule. It has been eloquently argued by the New Jersey Supreme Court in Patusco v. Prince Macaroni, Inc., 1967, 50 N.J. 365, 235 A.2d 465, that the injured wife should recover for her medical expenses regardless of whether she or her husband actually made the payments.
If the wife were permitted to sue for her medical expenses, her husband's contributory negligence would not bar her claim.
Reasonably, it should not matter to the tort feasor whether the wife or some third person made the expenditures his negligence made necessary. And, from the wife's point of view, her financial resources are depleted whether she or her husband pays her medical bills.
But the Patusco case presents only a solitary view of the prevailing law. Attractive as it may appear, we are not in a position to overrule the great body of precedent which holds that a husband may not recover on his claims based upon his wife's medical expenses to which his own negligence has contributed.
214 So.2d at 788-789. See also Hamm v. City of Milton, 358 So.2d 121 (Fla. 1st DCA 1978).
Accordingly, in appeal 83-2060, we must reverse the trial judge in regard to his failure to reduce Mrs. Caranna's award for future medical expenses by the amount of her negligence.
*266 The appeal in case number 83-2093, is by the appellant City from judgments entered in both Christopher's and Mrs. Caranna's action. The City raises four issues on appeal. We discuss only two. First, we conclude that the City was immune from liability under the doctrine of sovereign immunity established in Commercial Carrier v. Indian River County, 371 So.2d 1010 (Fla. 1979), and as applied by this court in Neumann v. Davis Water and Waste, Inc., 433 So.2d 559 (Fla. 2d DCA 1983), pet. for rev. denied, 441 So.2d 632 (Fla. 1983). As stated in Neumann, a failure to inspect by a governmental agency does not create a negligent act for which liability can be imposed because the liability does not arise by a "direct operational act of government or its employees." Neumann at 563. However, in holding the City immune under Commercial Carrier and Neumann, we recognize conflict with Trianon Park Condominium Association, Inc. v. City of Hialeah, 423 So.2d 911 (Fla. 3d DCA 1982), which is pending review in our supreme court. Because of that conflict, we also discuss and decide the issue of the trial court's failure to direct a verdict on the evidence.
The main thrust of the appellees' actions against the City was based on their allegations that the City was negligent in its inspection process and issuance of a certificate of occupancy because of the discrepancies in the width of the opening between the vertical dividers on the balcony of Room 600. Specifically, it is alleged that the City was negligent in that its inspection of the Holiday Inn and issuance of a certificate of occupancy failed to insure compliance with the applicable Southern Standard Building Code provisions which had been adopted by the City. Appellees allege that as a direct and proximate result of that negligence, their damages were incurred. We cannot agree. First, we find no support in the record that establishes any duty of inspections by the City for each individual opening of the balcony railings for each of the 147 rooms of the hotel as it was originally constructed.
There was no negligence shown in the approval of the architectural plans. The trial judge granted summary judgment for the Architect which we, in this opinion, affirm. Therefore, if the Architect was not negligent in the preparation of the plans, the City could not be negligent in the approval of the plans.
The only evidence we find in the record concerning the extent of any inspection of construction is testimony that pursuant to the Southern Standard Building Code, inspection of balconies is not included in the areas of construction that are required to be inspected.
Second, even should there have been established a duty by the City to inspect the balcony railing openings during construction, we find that the record contains no support that any negligence in that inspection was the "direct and proximate" cause of appellees' damages. The Southern Standard Building Code requires that the maximum opening in balcony railings between vertical dividers be not more than eight inches. The widest of such openings on the balcony of Room 600, through which Christopher fell, ranged from 8 3/16 inches to 8 5/16 inches. The testimony of Mrs. Caranna established that just before Christopher had fallen through that opening, he had easily run through the opening in the balcony railing to the adjoining room. That opening ranged from 7 1/2 inches to 7 3/4 inches. Therefore, even if the City was required to inspect each opening on each balcony of each room to insure compliance with the eight-inch Southern Standard Building Code, that compliance would not have kept Christopher from falling where the evidence shows he had easily run through a smaller opening just moments earlier. Thus, any failure on the part of the City to insure compliance with the Southern Standard Building Code could not have been the "direct and proximate" cause of the appellees' damages. Florida Standard Jury Instruction (Civil) 5.1(a), states that test to be as follows:
Negligence is a legal cause of loss, injury or damage if it directly and in *267 natural and continuous sequence produces or contributes substantially to producing such loss, injury or damage so that it can reasonably be said that, but for the negligence, the loss, injury or damage would not have occurred.
The standard jury instruction, of course, reflects the law of Florida on this subject. Sardell v. Malanio, 202 So.2d 746 (Fla. 1967); General Telephone Company of Florida v. Choate, 409 So.2d 1101 (Fla. 2d DCA 1982); Greene v. Flewelling, 366 So.2d 777 (Fla. 2d DCA 1979); Broome v. Budget Rent-A-Car of Jacksonville, Inc., 182 So.2d 26 (Fla. 1st DCA 1966); 38 Fla. Jur.2d Negligence §§ 29, 30 (1982).
We must comment on one other requirement of the Southern Standard Building Code. The same section that requires openings in balcony railings to be no more than eight inches between vertical dividers also calls for a bottom rail or curb no more than two inches above the floor. While the bottom of each vertical divider on the balconies of the Holiday Inn had such a bottom rail or curb, there was no such curb between the dividers. The Southern Standard Building Code does not specify whether or not such a curb should be continuous. Nevertheless, there is no evidence in the record, chargeable against the City, that would show how the absence or presence of such a rail no more than two inches above the floor could have contributed to or prevented Christopher from falling through the opening that measured 36 1/2 inches vertically from the floor to the bottom of the top railing. Viewing the evidence presented by the appellees in light of the standard set forth in the Florida Standard Jury Instructions, we must find that the appellees did not carry their burden of demonstrating that any negligence of the City as alleged and proved was the legal cause of their damages. Accordingly, we reverse the judgments against the City in appeal number 83-2093. On remand, a judgment shall be entered based upon the City's motions for directed verdict.
The final of these consolidated appeals for us to consider is appeal case number 83-2557. Because of our disposition on the other appeals, the sole remaining appellants in this final appeal are the Innkeepers. They appeal the final costs judgment entered against them in Mrs. Caranna's derivative action. The trial court, in its final judgment for costs, found that the costs incurred for Mrs. Caranna and Christopher in their respective actions were "indistinguishable and overlapping." We disagree.
Prior to the return of the jury verdict, Christopher's claims against the Innkeepers were compromised in a structured settlement that could amount to as much as $1,739,000.00. As part of the settlement, each party agreed to pay their own costs. If Christopher complies with that agreement, there would be very little costs attributable solely to Mrs. Caranna's claim against the appellant Innkeepers that will not have been paid. When Christopher's and Mrs. Caranna's actions were first filed, they were in one lawsuit and were represented by the same attorneys.
Early in the proceedings, it was determined that Mrs. Caranna's action should be voluntarily dismissed. This was done on August 3, 1979. She did not appear in the action again until the Innkeepers brought her back in as a third party defendant for the purpose of contribution. As a result, on April 24, 1981, she refiled her derivative claims against the Innkeepers as a third party counterclaim. In light of the above sequence of events, we reverse the costs judgment for Mrs. Caranna. On remand, inasmuch as Christopher had agreed with the Innkeepers to pay all his costs, the trial court shall determine what costs that Christopher will not have been required to pay under his agreement. Any of those remaining unpaid costs, if applicable, shall then be assessed in favor of Mrs. Caranna and against the Innkeepers.
In appeal number 83-1636, the final summary judgment for appellee Eades is affirmed.
In appeal number 83-2060, the judgment against the appellant Franchisor Holiday Inns, Inc., and in favor of Mrs. Caranna in *268 her derivative actions is reversed and, on remand, the trial court shall enter a directed verdict and judgment in favor of Holiday Inns, Inc. The judgment in appeal number 83-2060 against the Innkeepers is reversed to the extent the trial judge failed to reduce Mrs. Caranna's derivative action for future medical expenses by her seventy-five percent comparative negligence. The judgment is otherwise affirmed. On remand, the trial court shall enter a new judgment in accord with this opinion.
In appeal number 83-2093, the judgment against the appellant City is reversed and, on remand, the trial court shall enter a directed verdict and judgment for the City.
In appeal number 83-2557, the costs judgment against appellant Holiday Inns, Inc., is reversed according to our opinion in appeal number 83-2060. The cost judgment against the Innkeepers is reversed to the extent expressed in our opinion that costs were not properly apportioned. On remand, the trial court shall enter a costs judgment only on those costs it finds directly attributable on behalf of Mrs. Caranna, and not required to be paid by Christopher, in accord with our opinion herein.
GRIMES, A.C.J., and RAWLINS, Jr., ROBERT W., Associate Judge, concur.
NOTES
[1] 433 So.2d at 494.