468 So.2d 912 (1985)
TRIANON PARK CONDOMINIUM ASSOCIATION, INC., Petitioner,
v.
CITY OF HIALEAH, Respondent.
No. 63115.
Supreme Court of Florida.
April 4, 1985.
Rehearing Denied May 22, 1985.
*914 Alan E. Tannenbaum and Alan S. Becker of Becker, Poliakoff and Streitfeld, Fort Lauderdale, for petitioner.
Chesterfield Smith, Julian Clarkson, Marty Steinberg and Andrea Simonton of Holland and Knight, Miami, for respondent.
James R. Wolf, Gen. Counsel, and Harry Morrison, Jr., Asst. Gen. Counsel, Tallahassee, amicus curiae for Florida League of Cities, Inc.
M.A. Galbraith, Jr., City Atty., Boca Raton, amicus curiae for City of Boca Raton.
Robert A. Ginsburg, County Atty., and Thomas Goldstein, Asst. County Atty., Miami, amicus curiae for Dade County.
Jack R. Rice, Jr., Miami, amicus curiae for The Dade County League Of Cities, Inc.
OVERTON, Justice.
This is a petition to review Trianon Park Condominium Association v. City of Hialeah, 423 So.2d 911 (Fla. 3d DCA 1982), in which the district court held the City of Hialeah liable to condominium owners for damage to condominium units caused by severe roof leakage and other building defects on the basis that the city building inspectors were negligent in their inspections during the construction of the condominiums. The district court certified the following question:
Whether under section 768.28, Florida Statutes (1975), as construed in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), a municipality retains its sovereign immunity from a suit predicating liability solely upon the allegedly negligent inspection of a building, where that municipality played no part in the actual construction of the building.
Id. at 914-15. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
We restate the certified question as follows:
Whether a governmental entity may be liable in tort to individual property owners for the negligent actions of its building inspectors in enforcing provisions of a building code enacted pursuant to the police powers vested in that governmental entity.
We answer the restated question in the negative and quash the decision of the district court of appeal.
In summary, we first emphasize that section 768.28, Florida Statutes (1975), which waived sovereign immunity, created no new causes of action, but merely eliminated the immunity which prevented recovery for existing common law torts committed by the government. We hold that there has *915 never been a common law duty to individual citizens for the enforcement of police power functions. Further, we find that no statutory duty for the benefit of individual citizens was created by the city's adoption of the building code, and, therefore, there is no tort liability on the part of the city to the condominium owners for the allegedly negligent exercise of the police power function of enforcing compliance with the building code. To hold a governmental entity liable for carrying out this type of enforcement activity would make the taxpayers of the enforcing governmental entity insurers of all building construction within the jurisdiction of the entity. We conclude that such a result was never intended by either the legislature or the city in enacting the building code provisions. Our decision, as explained below, is consistent with the decisions of the majority of states and the recent decision of the United States Supreme Court in United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), ___ U.S. ___, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).
The record reflects that Trianon Park Condominium Association, consisting of 65 unit-owners, brought suit against the developer for breach of warranty, negligence, and strict liability, and against the City of Hialeah for its negligent performance in inspecting the condominium building and certifying it for occupancy. Trianon asserted that there was improper construction of the roof membrane, flashing, and drainage system on the main roofs, and other flaws in the construction which resulted in leaks and water damage to 49 of the 65 condominium units. The action against the developer was settled and the jury returned a verdict against the city in the amount of $291,000. The award was reduced by the amount of the settlement with the developer and was limited to the maximum amount provided under section 768.28(5). On appeal, the district court affirmed and held that the enforcement of a building code "is a purely ministerial action which does not rise to the status of basic policy evaluation since the majority of the inspectors' acts involve simple measurement and enforcement of the building code as written rather than the exercise of discretion and expertise," and that "[o]nce the City undertook to inspect, review and certify construction, it was obligated to do so reasonably and responsibly in accordance with acceptable standards of care." 423 So.2d at 913. The court concluded that "the City's inspection and certification of buildings within its borders is an operational level activity, for which it may be subject to tort liability under section 768.28, Florida Statutes." Id.
Trianon, although it prevailed in the district court, petitioned this Court for review of the question certified by the district court of appeal. In support of the district court of appeal decision, Trianon contends that building inspections performed by a governmental entity under an adopted building code are "operational-level" activities. Trianon argues that the operational-planning analysis developed in Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965), and adopted by this Court in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), is the sole means to determine liability; that we clearly stated in Commercial Carrier that the operational-planning test has replaced the special duty/general duty analysis contained in Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967); and that the second and third elements of the Evangelical Brethren test have not been satisfied in this case because building inspections themselves do not change the direction or policy of the building inspection program of the city but are purely ministerial in nature. Trianon acknowledges, however, that law enforcement and fire suppression activities should not subject the city to tort liability. It distinguishes building inspections from those types of activities on the ground that the legislature has imposed broad regulatory requirements on municipalities in the area of building code enforcement under chapter 553, Florida Statutes (1979), and asserts that, unlike law enforcement or fire *916 suppression, there are mandatory duties to be followed during building inspections.
Trianon argues that we should follow the four states that have determined that government building inspections can be a basis for governmental liability, and that we should adopt the views expressed in Adams v. State, 555 P.2d 235 (Alaska 1976); Wilson v. Nepstad, 282 N.W.2d 664 (Iowa 1979); Stewart v. Schmieder, 386 So.2d 1351 (La. 1980); and Coffey v. City of Milwaukee, 74 Wis.2d 526, 247 N.W.2d 132 (1976). In addition, while acknowledging that decisions interpreting the Federal Tort Claims Act may not be applicable because of certain exemptions contained in the Act, Trianon asserts that decisions by the federal courts in Caban v. United States, 671 F.2d 1230 (2d Cir.1982); Neal v. Bergland, 646 F.2d 1178 (6th Cir.1981); Delta Air Lines, Inc. v. United States, 561 F.2d 381 (1st Cir.1977), cert. denied, 434 U.S. 1064, 98 S.Ct. 1238, 55 L.Ed.2d 764 (1978); and Scott v. Eastern Air Lines, Inc., 399 F.2d 14 (3d Cir.1967), cert. denied, 393 U.S. 979, 89 S.Ct. 446, 21 L.Ed.2d 439 (1968), are consistent with a finding of liability for the governmental entity in making such inspections.
In response, the City of Hialeah contends that since there is no analogous cause of action against private parties for the negligent enforcement of building codes, there can be no liability for the city. The city argues that the waiver of sovereign immunity did not create any duty and that no such duty was created by either the statute establishing the building code or the common law. The city reasons that this Court, in Commercial Carrier, recognized that an underlying cause of action was required before a governmental entity could be held liable. It distinguishes between governmental liability for damages caused by the operation or maintenance of capital improvements owned and controlled by the government and governmental liability in those circumstances where the government is regulating activities and enforcing compliance with the law through its police power function.
The city and the other governmental entities that have appeared in this action point out that the majority of federal jurisdictions which have addressed the issue have held that federal regulatory enforcement activities, such as those performed by the Environmental Protection Agency, the United States Food and Drug Administration, and the Federal Aviation Authority, do not give rise to actionable tort duties owed by the United States to individual citizens. See Sellfors v. United States, 697 F.2d 1362 (11th Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 3571, 82 L.Ed.2d 870 (1984); Raymer v. United States, 660 F.2d 1136 (6th Cir.1981), cert. denied, 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982); Gelley v. Astra Pharmaceutical Products, Inc., 610 F.2d 558 (8th Cir.1979); Zabala Clemente v. United States, 567 F.2d 1140 (1st Cir.1977), cert. denied, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); Baer v. United States, 511 F. Supp. 94 (N.D.Ohio 1980), aff'd, 703 F.2d 558 (6th Cir.1982); Carroll v. United States, 488 F. Supp. 757 (D.Idaho 1980); Mercer v. United States, 460 F. Supp. 329 (S.D.Ohio 1978). The governmental entities also direct our attention to the fact that thirteen states have held that no liability may arise from building inspections. Rich v. City of Mobile, 410 So.2d 385 (Ala. 1982); Duran v. City of Tucson, 20 Ariz. App. 22, 509 P.2d 1059 (1973); Stigler v. City of Chicago, 48 Ill.2d 20, 268 N.E.2d 26 (1971); Grogan v. Commonwealth, 577 S.W.2d 4 (Ky.), cert. denied, 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979); E. Eyring & Sons Co. v. City of Baltimore, 253 Md. 380, 252 A.2d 824 (1969); Dinsky v. Town of Framingham, 386 Mass. 801, 438 N.E.2d 51 (1982); Stemen v. Coffman, 92 Mich. App. 595, 285 N.W.2d 305 (1979); Hoffert v. Owatonna Inn Towne Motel, Inc., 293 Minn. 220, 199 N.W.2d 158 (1972); Fiduccia v. Summit Hill Construction Co., 109 N.J. Super. 249, 262 A.2d 920 (1970); O'Connor v. City of New York, 58 N.Y.2d 184, 460 N.Y.S.2d 485, 447 N.E.2d 33 (1983); Shelton v. Industrial Commission, 51 Ohio App.2d 125, 367 N.E.2d 51 (1976); City of Denton v. Weems, 456 S.W.2d 207 (Tex.Civ.App. 1970); *917 and Georges v. Tudor, 16 Wash. App. 407, 556 P.2d 564 (1976). Further, the city asserts that the decisions from the states of New York, Ohio, and Minnesota, which we cited in Commercial Carrier,[1] are all consistent with the view that no liability can arise from the enforcement of a building code. In addition, the city cites section 315 of the Restatement of Torts, which expresses the general common law rule that there is no duty to prevent the misconduct of a third person,[2] and section 288 of the Restatement, which relates in its commentary that legislative enactments for the protection of the interests of the community as a whole, rather than for the protection of any individual or class, create no duty or liability.[3] The city claims that Florida law has developed in a way similar to the law of Minnesota, New York, and Ohio, and notes that this Court, in Rupp v. Bryant, 417 So.2d 658 (Fla. 1982), recently recognized the principle that before liability could be imposed a duty must first exist. Finally, the city argues that law enforcement is not the kind of activity for which the state intended to waive its immunity since it is not the type of activity engaged in by private individuals. We find persuasive the arguments of the city.
It is apparent from the decisions of the district courts of appeal that the courts and the bar are having difficulty interpreting the purpose of section 768.28 and applying the principles set forth in Commercial Carrier. A discussion of the evolving history of sovereign immunity, particularly as applied to municipalities, and the intent and purpose of section 768.28 is set forth in Cauley v. City of Jacksonville, 403 So.2d 379 (Fla. 1981). In order to clarify the law regarding governmental tort liability, it is important to first set forth certain basic principles.
First, for there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct. For certain basic judgmental or discretionary governmental functions, there has never been an applicable duty of care. Commercial Carrier. Further, legislative enactments for the benefit of the general public do not automatically create an independent duty to either individual citizens or a specific class of citizens. Restatement (Second) of Torts § 288 comment b (1964).
Second, it is important to recognize that the enactment of the statute waiving sovereign immunity did not establish any new duty of care for governmental entities. The statute's sole purpose was to waive that immunity which prevented recovery for breaches of existing common law duties of care. Section 768.28 provides that governmental entities "shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances." This effectively means that the identical existing duties for private persons apply to governmental entities.
*918 Third, there is not now, nor has there ever been, any common law duty for either a private person or a governmental entity to enforce the law for the benefit of an individual or a specific group of individuals. In addition, there is no common law duty to prevent the misconduct of third persons. See Restatement (Second) of Torts § 315 (1964).
Fourth, under the constitutional doctrine of separation of powers, the judicial branch must not interfere with the discretionary functions of the legislative or executive branches of government absent a violation of constitutional or statutory rights. See Commercial Carrier; Askew v. Schuster, 331 So.2d 297 (Fla. 1976); art. II, § 3, Fla. Const. Judicial intervention through private tort suits into the realm of discretionary decisions relating to basic governmental functions would require the judicial branch to second guess the political and police power decisions of the other branches of government and would violate the separation of powers doctrine.
Fifth, certain discretionary functions of government are inherent in the act of governing and are immune from suit. Commercial Carrier. It is "the nature of the conduct, rather than the status of the actor," that determines whether the function is the type of discretionary function which is, by its nature, immune from tort liability. Varig Airlines, 104 S.Ct. at 2765.
In addition to these five basic principles, a review of our decision in Commercial Carrier is necessary. It is important to note at the outset that this Court's decision in Commercial Carrier, in rejecting the general duty/special duty dichotomy contained in Modlin v. City of Miami Beach, did not discuss or consider conduct for which there would have been no underlying common law duty upon which to establish tort liability in the absence of sovereign immunity. Rather, we were dealing with a narrow factual situation in which there was a clear common law duty absent sovereign immunity. We expressly recognized that there were areas of governmental activity where "orthodox tort liability stops and the act of governing begins," 371 So.2d at 1018, citing Evangelical Brethren, 67 Wash.2d at 253, 407 P.2d at 444, as well as the "distinct principle of law ... which makes not actionable in tort certain judgmental decisions of governmental authorities which are inherent in the act of governing." 371 So.2d at 1020. We concluded by holding that "certain `discretionary' governmental functions remain immune from tort liability ... because certain functions of coordinate branches of government may not be subjected to scrutiny by judge or jury as to the wisdom of their performance." Id. at 1022. We proceeded to adopt the distinction between the planning and operational levels of decision-making set forth in Johnson v. State, 69 Cal.2d 782, 447 P.2d 352, 73 Cal. Rptr. 240 (1968). We also commended, for use on a case-by-case method, the test set forth in Evangelical Brethren which utilized the following criteria for determining the line of demarcation between discretionary and other executive or administrative processes, specifically:
(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?
371 So.2d at 1019, quoting 67 Wash.2d at 255, 407 P.2d at 445. In applying this test to a particular set of circumstances, if all the questions can be answered in the affirmative, then the governmental conduct is discretionary and "nontortious." If one or more questions call for a negative answer, then further inquiry is necessary, *919 depending upon the facts and circumstances involved. 67 Wash.2d at 255, 407 P.2d at 445. Our adoption of the Evangelical Brethren test was intended to assist in distinguishing between the discretionary planning or judgment phase, and the operational phase of government. In order to subject the government to tort liability for operational phase activities, there must first be either an underlying common law or statutory duty of care in the absence of sovereign immunity. In addition, although the Evangelical Brethren test works properly in instances where a common law or statutory duty exists, it need not be applied in situations where no common law or statutory duty of care exists for a private person because there clearly is no governmental liability under those circumstances.
To better clarify the concept of governmental tort liability, it is appropriate to place governmental functions and activities into the following four categories: (I) legislative, permitting, licensing, and executive officer functions; (II) enforcement of laws and the protection of the public safety; (III) capital improvements and property control operations; and (IV) providing professional, educational, and general services for the health and welfare of the citizens.

I. Legislative, Permitting, Licensing, and Executive Officer Functions.

Clearly, the legislature, commissions, boards, city councils, and executive officers, by their enactment of, or failure to enact, laws or regulations, or by their issuance of, or refusal to issue, licenses, permits, variances, or directives, are acting pursuant to basic governmental functions performed by the legislative or executive branches of government. The judicial branch has no authority to interfere with the conduct of those functions unless they violate a constitutional or statutory provision. There has never been a common law duty establishing a duty of care with regard to how these various governmental bodies or officials should carry out these functions. These actions are inherent in the act of governing. See Commercial Carrier; City of Tampa v. Islands Four, Inc., 364 So.2d 738 (Fla. 2d DCA 1978) (refusal to renew license); Hensley v. Seminole County, 268 So.2d 452 (Fla. 4th DCA 1972) (vehicle inspection); Central Advertising Co. v. City of Novi, 91 Mich. App. 303, 283 N.W.2d 730 (1979) (enactment of zoning ordinance); Bidinger v. City of Circleville, 177 N.E.2d 408 (Ohio App. 1961) (enactment of criminal ordinance); J.S.K. Enterprises, Inc. v. City of Lacey, 6 Wash. App. 433, 493 P.2d 1015 (1972) (enactment of ordinance).

II. Enforcement of Laws and Protection of the Public Safety.

How a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there never has been a common law duty of care. This discretionary power to enforce compliance with the law, as well as the authority to protect the public safety, is most notably reflected in the discretionary power given to judges, prosecutors, arresting officers, and other law enforcement officials, as well as the discretionary authority given fire protection agencies to suppress fires. This same discretionary power to enforce compliance with the law is given to regulatory officials such as building inspectors, fire department inspectors, health department inspectors, elevator inspectors, hotel inspectors, environmental inspectors, and marine patrol officers. A "discretionary function exception," within which these types of activities fall, was expressly recognized in the Federal Tort Claims Act[4] and has also *920 been recognized as inherent in the act of governing by this Court and a majority of the other jurisdictions that have addressed this issue. See, e.g., Commercial Carrier; Morris v. County of Marin, 18 Cal.3d 901, 559 P.2d 606, 136 Cal. Rptr. 251 (1977); Cairl v. State, 323 N.W.2d 20 (Minn. 1982); Swartz v. Masloff, 62 Pa.Commw. 522, 437 A.2d 472 (1981); Maynard v. City of Madison, 101 Wis.2d 273, 304 N.W.2d 163 (1981). See also Note, The Discretionary Exception and Municipal Tort Liability: A Reappraisal, 52 Minn.L.Rev. 1047 (1968); Comment, The Discretionary Function Exception to Government Tort Liability, 61 Marq.L.Rev. 163 (1977). The necessity for this discretionary function exception was recently discussed by the United States Supreme Court in Varig Airlines, 104 S.Ct. at 2762-65. There have been a number of recent cases dealing with police power discretionary function activities for which no liability was found. See Rodriguez v. City of Cape Coral, 468 So.2d 963 (Fla. 1985) (decision to take person into protective custody); City of Daytona Beach v. Huhn, 468 So.2d 963 (Fla. 1985) (decision to make arrest); City of Daytona Beach v. Palmer, 469 So.2d 121 (Fla. 1985) (decisions of firefighters in combatting fire); Carter v. City of Stuart, 468 So.2d 955 (Fla. 1985) (enforcement of dogcatcher ordinance); Reddish v. Smith, 468 So.2d 929 (Fla. 1985) (prisoner classification); Duvall v. City of Cape Coral, 468 So.2d 961 (Fla. 1985) (enforcement of drunk driving statute); Everton v. Willard, 468 So.2d 936 (Fla. 1985) (decision to make arrest); Wong v. City of Miami, 237 So.2d 132 (Fla. 1970) (provision of police protection); Jones v. City of Longwood, 404 So.2d 1083 (Fla. 5th DCA 1981), review denied, 412 So.2d 467 (Fla. 1982) (building inspection and condemnation); Berry v. State, 400 So.2d 80 (Fla. 4th DCA), review denied, 411 So.2d 380 (Fla. 1981) (acts of judges, state attorneys, and parole and probation commission); Ellmer v. City of St. Petersburg, 378 So.2d 825 (Fla. 2d DCA 1979) (failure to provide adequate police protection); Weston v. State, 373 So.2d 701 (Fla. 1st DCA 1979) (state attorney action); and Shoner v. Concord Florida, Inc., 307 So.2d 505 (Fla. 3d DCA), cert. denied, 317 So.2d 767 (Fla. 1975) (enforcement of city ordinance).
The lack of a common law duty for exercising a discretionary police power function must, however, be distinguished from existing common law duties of care applicable to the same officials or employees in the operation of motor vehicles or the handling of firearms during the course of their employment to enforce compliance with the law. In these latter circumstances there always has been a common law duty of care and the waiver of sovereign immunity now allows actions against all governmental entities for violations of those duties of care. See, e.g., Crawford v. Department of Military Affairs, 412 So.2d 449 (Fla. 5th DCA), review denied, 419 So.2d 1196 (Fla. 1982) (negligent operation of vehicle).

III. Capital Improvement and Property Control Functions.

As this Court has made clear in prior cases, there is no liability for the failure of a governmental entity to build, expand, or modernize capital improvements such as buildings and roads. See Perez v. Department of Transportation, 435 So.2d 830 (Fla. 1983); City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982); Ingham v. Department of Transportation, 419 So.2d 1081 (Fla. 1982); Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982). A governmental entity's decision not to build or modernize a particular improvement is a discretionary judgmental function with which we have held the courts cannot interfere. See Neilson (decision to upgrade roadway). See also Rumbough v. City of Tampa, 403 So.2d 1139 (Fla. 2d DCA 1981) (operation of sanitary landfill); Romine v. Metropolitan Dade County, 401 So.2d 882 (Fla. 3d DCA 1981), review denied, 412 So.2d 469 (Fla. 1982) (traffic control decisions). On the other *921 hand, once a governmental entity builds or takes control of property or an improvement, it has the same common law duty as a private person to properly maintain and operate the property. See Commercial Carrier (maintenance of traffic control devices); Department of Transportation v. Webb, 438 So.2d 780 (Fla. 1983) (maintenance of railroad crossing); Hodges v. City of Winter Park, 433 So.2d 1257 (Fla. 5th DCA 1983), review denied, 444 So.2d 416 (Fla. 1984) (maintenance of road); Town of Belleair v. Taylor, 425 So.2d 669 (Fla. 2d DCA 1983) (maintenance of foliage on median); City of Tallahassee v. Elliott, 326 So.2d 256 (Fla. 1st DCA 1975), cert. denied, 344 So.2d 324 (Fla. 1977) (maintenance of drainage system).

IV. Providing Professional, Educational, and General Services.

Providing professional, educational, and general services for the health and welfare of citizens is distinguishable from the discretionary power to enforce compliance with laws passed under the police power of this state. These service activities, such as medical and educational services, are performed by private persons as well as governmental entities, and common law duties of care clearly exist. Whether there are sufficient doctors provided to a state medical facility may be a discretionary judgmental decision for which the governmental entity would not be subject to tort liability. Malpractice in the rendering of specific medical services, however, would clearly breach existing common law duties and would render the governmental entity liable in tort. A discussion of immunity for the government and its employees is contained in our recent decision in Rupp v. Bryant, 417 So.2d 658 (Fla. 1982) (supervision of public school students held not to be a discretionary function).
In considering governmental tort liability under these four categories, we find that there is no governmental tort liability for the action or inaction of governmental officials or employees in carrying out the discretionary governmental functions described in categories I and II because there has never been a common law duty of care with respect to these legislative, executive, and police power functions, and the statutory waiver of sovereign immunity did not create a new duty of care. On the other hand, there may be substantial governmental liability under categories III and IV. This result follows because there is a common law duty of care regarding how property is maintained and operated and how professional and general services are performed. It is in these latter two categories that the Evangelical Brethren test is most appropriately utilized to determine what conduct constitutes a discretionary planning or judgmental function and what conduct is operational for which the governmental entity may be liable. Prior to the enactment of section 768.28, sovereign immunity for all governmental entities, including the state and all of its agencies and subdivisions, remained in full force except for the proprietary and special duty exceptions carved out by this Court. Section 768.28 waived governmental immunity for most government activities where there had been an underlying common law duty of care. The waiver was intended to be broad in its coverage, but clearly was not intended to create causes of action for activities that are inherently governmental in nature.

The Instant Case:
In the instant case, Trianon attempts to establish liability based upon an alleged general duty to enforce the building code. It contends that the legislature, by enacting chapter 553, established a statutory duty on the part of governmental entities to inspect construction projects for the protection of individual citizens as well as the general public. Trianon asserts that this duty to inspect was intended by the legislature to benefit and protect individual property owners. Further, Trianon emphatically contends that the issue presented involves the right of the public to the enforcement of minimum standards affecting health and safety and the general protection of human life and property. The time has come, argues Trianon, for the judicial branch to make sure the public *922 receives the minimum protection that the legislature has mandated it receive from governmental entities. Trianon asserts that this protection will be realized only when the counties and municipalities are held financially accountable for the negligent enforcement of building codes. We reject the contention that there was any such legislative intent to establish this individual right for property owners and the assertion that the judiciary should interfere with how another branch of government chooses to enforce the law.
Nothing contained in chapter 553 evinces an intent to give individual citizens a statutory right of recovery for the government's negligent inspection of their property. The act itself states that its purpose and intent is to "allow reasonable protection for public safety, health, and general welfare for all the people of Florida at the most reasonable cost to the consumer." Section 553.72, Fla. Stat. (1983) (emphasis added). This law is no different than other acts of the legislature which seek to protect by regulation the welfare of society. To give effect to Trianon's position would make the taxpayers of each governmental entity liable to individual property owners for the failure of governmental inspectors to use due care in enforcing the construction requirements of the building code. It would make the governmental entity and its taxpayers insurers for all building construction defects. If we approved this principle for building inspections, we would also necessarily have to find governmental entities and their taxpayers fiscally responsible for the failure to use due care in carrying out their power to enforce compliance with laws regarding fire department inspections, elevator inspections, hotel and restaurant inspections, water and sewer plant inspections, swimming pool inspections, and multiple other governmental inspection programs designed to protect the public. We choose instead to join the majority of jurisdictions in rejecting governmental liability in these types of situations.
We find that the enactment of a statute giving a governmental entity the power to enforce compliance with the law does not, in and of itself, give individuals a new right of action that previously never existed. There is no question that the legislature has the power to create such a cause of action, but we find no such intent in the particular act which provided for the establishment of building codes in this state. We find no indication that chapter 553 was intended as a means to guarantee the quality of buildings for individual property owners or developers. We find that the enforcement of building codes and ordinances is for the purpose of protecting the health and safety of the public, not the personal or property interests of individual citizens. The discretionary power to enforce compliance with the building code flows from the police power of the state. In that regard, this power is no different from the discretionary power exercised by the police officer on the street in enforcing a criminal statute, the discretionary power exercised by a prosecutor in deciding whether to prosecute, or the discretionary power exercised by a judge in making the determination as to whether to incarcerate a defendant or place him on probation. Statutes and regulations enacted under the police power to protect the public and enhance the public safety do not create duties owed by the government to citizens as individuals without the specific legislative intent to do so. The enforcement of statutes or regulations is clearly distinguishable from the legal responsibilities owed by the government as the owner and operator of buildings, roadways, or other facilities under its control and its responsibilities in providing general or professional services. As previously mentioned, in the latter instances the government has the same duty as that imposed upon private citizens.
Governments must be able to enact and enforce laws without creating new duties of care and corresponding tort liabilities that would, in effect, make the governments and their taxpayers virtual insurers of the activities regulated. To hold otherwise would result in a substantial fiscal impact on governmental entities which was never intended by the legislature. Such a *923 holding would inevitably restrict the development of new programs, projects, and policies and would decrease governmental regulation intended to protect the public and enhance the public welfare. Further, such a holding would represent an unconstitutional intrusion by the judiciary into the discretionary judgmental functions of both the legislative and executive branches of government.
The government clearly has no responsibility to protect personal property interests or ensure the quality of buildings that individuals erect or purchase. The proper remedy for faulty construction lies in an action against the contractor, developer, or seller.
We caution trial and appellate courts who apply this decision that our holding does not have the broad ramifications characterized by the dissents, nor does it recede from Commercial Carrier. This decision addresses only the narrow issue of exercising basic discretionary judgment in the enforcement of the police power, public safety functions by a state, county, or municipal governmental entity.
For the reasons expressed, the certified question, as restated, is answered in the negative and the decision of the district court is quashed.
It is so ordered.
BOYD, C.J., and ALDERMAN and McDONALD, JJ., concur.
McDONALD, J., concurs with an opinion.
EHRLICH, J., dissents with an opinion, in which ADKINS, J., concurs.
SHAW, J., dissents with an opinion, in which ADKINS, J., concurs.
McDONALD, Justice, concurring.
To rule differently from what we do in this case would expect too much from government; it would likely lend to government's cessation of building inspections. Government should not have to pay for the wrongs caused by others because they fail to discover or prevent them through its failure to enforce statutes, ordinances, rules or regulations. I don't think the legislature either intended or envisioned governmental liability in such circumstances when it enacted the waiver of sovereign immunity statute. It is quite another thing when the government's activity directly causes an injury. Liability may attach in such circumstances and I would have no hesitancy in saying so.
EHRLICH, Justice, dissenting.
I dissent.
The majority today has further eroded the legislature's unequivocal waiver of sovereign immunity and further reduced the rights of citizens of this state to be recompensed for injury caused by negligent performance of statutorily mandated duties.
Before this Court's decision in Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957), municipalities could not be sued for damages arising out of the negligent performance of governmental acts, but were liable just as ordinary citizens for the negligent acts of their employees arising out of their proprietary functions, such as the provision of municipal utilities. In Hargrove, this Court for the first time recognized the anachronism of sovereign immunity, particularly as applied to municipalities, and held that a municipality was liable for the negligence of its employees in its police department on the theory of respondeat superior. In Modlin v. City of Miami Beach, this Court, in effect, receded from the broad, sweeping changes ushered in by Hargrove and held that a municipal employee, and hence the municipality, was not liable in damages to someone who was injured as a result of his negligent conduct unless there was a one-on-one relationship between the municipal employee and the injured party, i.e. where a municipality "undertook the manual operation of a railroad crossing signal toward a motorist attempting to negotiate that crossing," id. at 76, or "plac[ed] on police officers a duty not to deprive those with whom they come in contact of their constitutional rights of privacy, integrity of person, and so forth." Id. The law was thus clear that where there *924 was that one-on-one relationship that both the negligent municipal employee and the municipality were jointly and severally liable to the injured person.
The law remained thus until the legislature enacted section 768.28 in 1973, purporting to waive sovereign immunity of all governmental bodies except under stated circumstances, but at the same time immunizing the negligent employee from all liability.[1] In Commercial Carrier, this Court construed that statute for the first time. In that case the governmental unit was claimed to be negligent in the maintenance of the traffic light at an intersection and negligent in failing to maintain a stop sign at an intersection and negligent in failing to paint the word "stop" at an intersection. The trial courts and the district court of appeal held that no causes of action were stated. According to this Court, the rationale for the district court of appeal's holding was "that no cause of action existed for the alleged wrong and, therefore, section 768.28 had no applicability because it was not intended to create a cause of action where none existed in common law prior to its enactment." 371 So.2d at 1014 (emphasis supplied). In quashing the opinion of the district courts, this Court said, "Consequently, we concluded that Modlin and its ancestry and progeny have no continuing vitality subsequent to the effective date of 768.28." Id. at 1016. In Commercial Carrier, the respondent argued "that since private individuals do not perform government functions, there is no waiver where any governmental function is involved." Id. This argument was summarily rejected by this Court. This aspect of the Court's holding was perhaps best highlighted by the dissenting opinion of Justice Overton when he said, "Common sense dictates that the maintenance of thousands of miles of public roadways is not the kind of activity which private individuals engage in, but is uniquely governmental in nature."[2]Id. at 1023. The Court did however read into 768.28 the concept that "certain `discretionary' governmental functions remain immune from tort liability. This is so because certain functions of coordinate branches of government may not be subjected to scrutiny by judge or jury as to the wisdom of their performance." Id. at 1022. Thus the distinction between "planning" and "operational" levels of decision-making by governmental agencies was adopted; planning-level decisions were immune and operational decisions were not immune.
Today the majority embraces the very analysis explicitly quashed in Commercial Carrier. The majority focuses on whether, at common law, a duty existed running from a governmental agency to a member of the public. In so doing the majority begs the question and reinstates the old governmental-proprietarial distinction the legislature clearly intended to abolish in waiving sovereign immunity.
At common law, the sovereign was immune from suit, thus the question of whether or not duty existed was moot, and never litigated. The waiver of sovereign immunity rang in a new era in which that issue is of utmost importance. To answer the question by reference to pre-waiver common law in effect repeals the statute and usurps legislative function.
*925 It is well settled at common law that a statute creates a duty running from one whose behavior is the subject of the statute to an individual if that individual is in the class designed to be protected by the statute and the injury suffered is the harm the statute is intended to prevent. All private citizens are liable for breaches of statutorily imposed duties. A governmental agency, through its employees, then, should be liable for breaches of statutorily imposed duties under precisely the same analysis.
The majority recognizes that to subject the government to tort liability for operational phase negligence, there must be either an underlying common law or a statutory duty of care in the absence of sovereign immunity. The statute in the case at hand clearly mandated that no building permit be issued and that no certificate of occupancy be issued unless the statutory code was complied with. This is the statutory duty, the breach of which gives rise to the cause of action being asserted against the governmental entity.
The city adopted a building code. Whether it should adopt a building code, and if so what the code should contain, is a planning-level decision and the city has immunity in this area. The code prohibits the construction of a building until and unless a building permit is obtained, and in order to get one, the builder has to establish that the building plans conform to the code. The city employee who makes this determination of compliance or its absence is not making policy. That has already been done with the adoption of the code. This is a classic operational-level decision  to determine whether the plans comply with the code. If so, the permit must be issued. If not, a permit must not be issued. No discretion is vested in the employee. The code also requires on-site inspections to be performed to insure the building is being constructed in accordance with the plans. Here again the city inspector is not making policy. He is simply performing a ministerial task, another classic operational-level decision. If the construction is in accordance with the plans, a certificate of occupancy has to be issued. To issue one when construction is not in accordance with the plans is a violation of the code. The inspector's duty is prescribed by law. He has no discretion to breach that duty.
The majority says that to hold a governmental entity liable for making certain that the building code is carried out makes the governmental entity insurors of all building construction within the jurisdiction of the entity. Nothing could be further from the truth. An insuror is a guarantor and is liable without fault. Here the injured party must still prove negligence and proximate cause.
The statute is relatively simple. If a private person would be liable to the injured party in accordance with the general laws of the state, then the governmental entity is liable. If an architect is negligent in his supervision of construction of a building and such negligence is the proximate cause of another's injury or damage, he is clearly liable, whether there be privity or not. If the manufacturer of a building elevator is negligent in its inspection of the elevator and someone is injured or damaged thereby, he is clearly liable. In my opinion, the legislature intended to impose liability on a government entity for comparable negligent conduct by an inspector employed by a governmental entity.
It cannot be argued that the purchasers of these substandard condominium units were not within the class sought to be protected. While certification of housing as complying with a minimum building code does redound to the general good, its particular effect is to ensure that those who inhabit such housing are protected from the irresponsibility and carelessness of builder/entrepreneurs whose goal to maximize profits would, as here, minimize habitability. The harm, defective housing which threatens the health and welfare of its occupants, is as obviously that which the statute was designed to prevent.
The majority says "Finally, the city argues that law enforcement is not the kind of activity for which the state intended to waive its immunity since it is not the type *926 of activity engaged in by private individuals. We find persuasive the arguments of the city." This is precisely the argument urged in Commercial Carrier and finally rejected by this Court. As I see it, the majority is clearly receding from Commercial Carrier and adopting the Modlin doctrine and the old governmental/proprietary test. Only those actions which are commonly performed by private individuals will henceforth give rise to suits against the state. I believe we open ourselves to charges of judicial legislation when, six years after construing a statute based on legislative intent, this Court reverses its reading of that statute in spite of the fact that the legislature has given no indication that the original construction was erroneous.
I would answer the certified question in the affirmative and approve the decision of the district court.
ADKINS, J., concurs.
SHAW, Justice, dissenting.
The district court was correct in holding that building inspections are operational level activities under Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). If we were to answer the certified question as it was presented, Commercial Carrier would dictate a negative answer. The majority opinion recasts the question into one involving traditional tort principles which I paraphrase as, "Does a government entity have a duty to individual property owners under traditional tort law to enforce building code ordinances?" The majority then answers its own question by holding that the county is sovereignly immune because there is no duty. However, just as a waiver of sovereign immunity does not create a duty, an absence of duty does not create sovereign immunity.
The majority opinion commingles the separate issues of sovereign immunity and duty under traditional tort law. If a government entity is sovereignly immune from suit because of the separation of powers doctrine, there is no jurisdiction over the person (party) and the courts may not hear or address the merits of the case. Thus, any discussion of duty can only mean one of two things: the city is not sovereignly immune from suit and the courts have jurisdiction to decide the case on the merits using traditional tort principles; or, the city is immune and the court's analysis of the merits is dicta. I maintain, of course, that it is the former: government entities are not sovereignly immune from suit on discretionary, planning or police power activities. They may or may not be liable on the merits, but they are not immune.
The majority rejects the argument that the city's general duty to inspect under the building code created a special or actionable duty to individual citizens who suffer injury from the city's negligence in performing building inspections. Careful readers will recognize, absent the labeling, the substance of the Modlin doctrine[1] which we condemned in Commercial Carrier. Whatever label may be placed on it, the doctrine is routinely used in both private and governmental tort law because duty is a fundamental element in proving actionable negligence.
In Modlin, the complaint against the city alleged negligent performance of an inspection of construction in progress with the resulting failure to discover the defect that eventually caused the collapse of a mezzanine which killed plaintiff/petitioner's wife. In the first part of our opinion we analyzed the issue of sovereign immunity. The actual analysis is now irrelevant because it was based on a theory of municipal sovereign immunity which has been superseded by the enactment of section 768.28, Florida Statutes (1973), abolishing the distinctions between municipal and state sovereign immunity. See Commercial Carrier, 371 So.2d at 1016. Nevertheless, our conclusion is pertinent: "it follows that if the respondent city is to escape liability, it will have to be other than by the path of municipal *927 tort immunity." Modlin, 201 So.2d at 74. In other words, there was no sovereign immunity from suit but it still had to be determined whether there was liability under traditional tort principles.
It is a well recognized principle of tort law that a fundamental element of actionable negligence is the existence of a duty owed by the person charged with negligence to the person injured. However, there is also a doctrine of respectable lineage and compelling logic that holds that this duty must be something more than the duty that a public officer owes to the public generally.
Id. at 75 (citations omitted). The second quoted sentence is the Modlin doctrine which can be restated as, "A general duty to all does not, without more, establish a special (actionable) duty to a particular person." Governments have a general duty to all to preserve the peace by enforcing the law and regulating anti-social behavior. If violation of this general duty constituted actionable negligence, the government would be potentially liable in every tort suit between private individuals. The situation would be the same as that which existed in early English law before the courts began to differentiate between absolute standards of conduct owed to the world at large and legally recognizable standards owed to particular persons. See generally, Prosser and Keeton, The Law of Torts § 53 (5th ed. 1984).[2] Violation of the general duty to do unto others as you would have them do unto you, without more, is not actionable negligence in a secular court of law. Thus, private tort law and the Modlin doctrine are congruent.
In Commercial Carrier, we addressed the general duty  special duty dichotomy of the Modlin doctrine. We stated the doctrine as, "no cause of action exists for ... the state or its political subdivisions where the duty breached is said to be owed to the public at large but not to any particular person." Commercial Carrier, 371 So.2d at 1015. This statement highlights the first prong of the doctrine that a general duty does not create a special duty but obscures the equally important prong that the presence of a general duty does not preclude the presence of a special duty. Plaintiffs must be given the opportunity to present the "more" which may establish a special duty.[3] We concluded:
Regardless, it is clear that the Modlin doctrine is a function of municipal sovereign immunity and not a traditional negligence concept which has meaning apart from the governmental setting. Accordingly, its efficacy is dependent on the continuing vitality of the doctrine of sovereign immunity. If this be so, does the Modlin doctrine survive notwithstanding the enactment of section 768.28? We think not.
Id. It is clear to me that the Modlin doctrine did survive the waiver of sovereign immunity. The doctrine is grounded on the traditional tort principle of duty, not sovereign immunity, as the Modlin court itself recognized. The legislature, in section 768.28, waived sovereign immunity, not the traditional principle that duty is an essential element of actionable negligence. Section 768.28 not only did not abolish the doctrine, it affirmatively adopted the substance of the doctrine by providing that the government would be liable only "if a private person, would be liable to the claimant, in accordance with the general laws of this state[.]" Section 768.28(1).
Turning to the case at hand, I agree with that portion of Justice Ehrlich's dissent *928 wherein he concludes that the government's assumption of the responsibility to inspect and certify buildings in accordance with the building code created a duty toward the purchasers of the certified buildings.[4] To my mind, this is the type of special duty which the Modlin doctrine recognizes as actionable.
I more fully discuss my disagreement with the Court's approach to sovereign immunity issues in my dissents in Everton v. Willard, 468 So.2d 936 (Fla. 1985), Carter v. City of Stuart, 468 So.2d 955 (Fla. 1985), Reddish v. Smith, 468 So.2d 929 (Fla. 1985), and Duvall v. City of Cape Coral, 468 So.2d 961 (Fla. 1985). I add only that the four new categories of government functions and activities which the majority creates here can only add confusion to an already confused area of the law. The four categories are: (I) legislative, permitting, licensing, and executive officer functions; (II) enforcement of laws and the protection of the public safety; (III) capital improvements and property control operations; and (IV) providing professional, educational, and general services for the health and welfare of the citizens. The majority concludes there is no common law duty of care with respect to categories I and II and the statutory waiver of sovereign immunity did not create a new duty of care but that there is a common law duty of care with respect to categories III and IV. See majority op. at 919-921. If the state cannot be liable in the first two categories because of an absence of common law duty, but may be liable in the last two categories because of the presence of a common law duty, then it logically follows that there is no sovereign immunity for any of the four categories. Duty or lack of duty appears to be the distinguishing feature. This raises the question of whether Commercial Carrier and its progeny survive. Are the first two categories exclusively discretionary and planning level activities and the last two categories exclusively nondiscretionary and operational level activities? Obviously not. Is Commercial Carrier grounded on the separation of powers doctrine and sovereign immunity or has the majority abandoned it and transferred the question to one of traditional tort law duty? So far as I can tell, the categories are simply added on to the Evangelical Brethren,[5] discretionary, operational, planning, and police power tests. I note that all four categories are exercises of the police power, that all four are discretionary, that all four might be either operational or planning, and that the separation of powers doctrine is used as the test in all four for determining whether there exists a common law duty on the part of government to its tort victims. We have truly created a formidable mountain of tests and case law under which the government is sovereignly immune and/or nonliable in all but the rarest of cases. Despite the constitutional and statutory provisions which unequivocally waive sovereign immunity, the majority insists this is not so. I respectfully dissent.
ADKINS, J., concurs.
NOTES
[1] Weiss v. Fote, 7 N.Y.S.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960); Harris v. State, 48 Ohio Misc. 27, 358 N.E.2d 639 (1976); Silver v. City of Minneapolis, 284 Minn. 266, 170 N.W.2d 206 (1969).
[2] The section reads as follows:

§ 315. General Principle
There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection.
Restatement (Second) of Torts § 315 (1964).
[3] The comment on clause (a) of section 288 reads as follows:

b. Many legislative enactments and regulations are intended only for the protection of the interests of the community as such, or of the public at large, rather than for the protection of any individual or class of persons. Such provisions create an obligation only to the state, or to some subdivision of the state, such as a municipal corporation. The standard of conduct required by such legislation or regulation will therefore not be adopted by the court as the standard of a reasonable man in a negligence action brought by the individual.
Restatement (Second) of Torts § 288 comment b (1964).
[4] The exceptions from tort liability under the Federal Tort Claims Act are listed in 28 U.S.C. § 2680 (1982). Subsection (a) provides:

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
[1] I query whether, having now cloaked the governmental entity with sovereign immunity, the Court has not now called into question the constitutionality of section 768.28(9) which prevents suits against officers, employees or agents of the state. Such suits were available, at common law. See, e.g., F. Mechem, A Treatise on The Law of Public Offices and Officers, Chapter VI  Of the Liability of Ministerial Officers to Private Action  (1890). The combined effect of the statute and today's holding may well be a violation of article I, section 21, Florida Constitution.
[2] The majority mischaracterizes Commercial Carrier when it says that the Court was "dealing with a narrow factual situation in which there was a clear common law duty absent sovereign immunity." Significantly, the majority fails to cite a single case which holds that there was a common law duty on a government entity to put up and maintain traffic control devices. There are none because there could be no suits because of sovereign immunity.
[1] Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967).
[2] Prosser describes the effect of the absolute standard of conduct thusly, "[t]he defendant's obligation to behave properly apparently was owed to all the world, and he was liable to any person whom he might injure by his misconduct." Prosser at 357.
[3] See cases cited in Modlin for the proposition that the presence of a general duty does not preclude a finding of liability based on a concurrent special duty. First National Bank of Key West v. Filer, 107 Fla. 526, 145 So. 204 (1933); Thompson v. City of Jacksonville, 130 So.2d 105 (Fla. 1st DCA 1961); Hewitt v. Venable, 109 So.2d 185 (Fla. 3d DCA 1959); et al. See also Irwin v. Town of Ware, 392 Mass. 745, 467 N.E.2d 1292 (1984), for a cogent examination of the substance of the doctrine as applied in Massachusetts.
[4] I differ from him in two basic respects. First, I am persuaded that the legislative waiver of sovereign immunity is comprehensive: neither operational nor planning functions are immune from suit. Government entities are subject to suit on planning level functions just as private persons are. The separation of powers doctrine can only bar suit on nonjusticiable political questions. To hold otherwise is to frustrate the constitutional and statutory provisions waiving sovereign immunity. Second, the operational/planning test is a failed instrument as demonstrated by the progeny of Commercial Carrier. The simple truth is that planning alone will very rarely if ever injure anyone and for that reason is extremely unlikely to become the subject of a tort suit. However, when the planning becomes operational, it is properly the subject of a suit if the elements of a tort can be proven. The attempts to distinguish between planning and operational functions is an elaborate but irrelevant artifact when the legislature has completely waived sovereign immunity. If a governmental entity "plans" a tort and carries it out, thus injuring someone, the entity should be subject to suit just as a private person would be under the same circumstances.
[5] Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965).