795 So.2d 1062 (2001)
Laura Jean PIERRE, as Personal Representative of the Estate of Wilder Jean Pierre, deceased, Appellant,
v.
Kenneth JENNE, as Sheriff of Broward County for Broward County Sheriff's Office; the City of Oakland Park, and the City of Fort Lauderdale, Appellees.
Nos. 4D01-709, 4D01-904.
District Court of Appeal of Florida, Fourth District.
September 19, 2001.
Richard P. Pravato of Law Office of Wolf & Pravato, Fort Lauderdale, for appellant.
*1063 Bruce W. Jolly of Purdy, Jolly & Giuffreda, P.A., Fort Lauderdale, for Appellee-Broward Sheriff.
E. Bruce Johnson and Christine M. Duignan of Johnson, Anselmo, Murdoch, et al., Fort Lauderdale, for Appellee-City of Oakland Park.
Clark J. Cochran, Jr. and Hal B. Anderson of Billing, Cochran, Heath, Lyles & Mauro, P.A., Fort Lauderdale, for Appellee-City of Fort Lauderdale.
STREITFELD, JEFFREY E., Associate Judge.
These are consolidated appeals from final orders dismissing with prejudice amended complaints alleging negligence by 911 operators of defendants/appellees Ken Jenne, as Sheriff of Broward County, the City of Fort Lauderdale, and the City of Oakland Park. We affirm.
The following facts are taken from the amended complaints, which include as an exhibit the transcript of the 911 tape:[1]
Early in the afternoon of December 19, 1999, Wilder Pierre, and his cousin, Roulbens Desir, were being chased at high speed in the City of Fort Lauderdale by two men in a black Honda driven by someone who had threatened to kill Pierre and Desir earlier that day. While Desir continued to drive, Pierre called 911.
In Broward County, the 911 system is operated by the Sheriff. Pierre's call was initially routed to a Fort Lauderdale operator. In the exchanges that followed, Pierre kept asking for a police car to come and help, and the operator attempted to get vital information, including their ever-changing location. The operator then suggested that they drive to the Fort Lauderdale Police Department on Broward Boulevard, which might discourage the men chasing them from harming them.
The Fort Lauderdale 911 operator, when further assessing Pierre and Desir's location, connected them with the Oakland Park 911 operator so that they could get directions to the Oakland Park Police Department. However, after a brief exchange, it became clear that no progress was being made. Oakland Park was still attempting to obtain the details of the situation and had not yet given directions to the two young men. The Fort Lauderdale 911 operator resumed control of the call. Shortly thereafter, the continued chase caused the vehicle in which Pierre and Desir were driving to strike another vehicle resulting in their immediate death.
The 911 call lasted approximately six minutes and forty-four seconds. The 911 operators did not ever give assurances of their ability to provide assistance other than to direct the caller to the nearest police station. There is no suggestion that Pierre and Desir abandoned an available option to avoid their chasers in justifiable reliance on any promise of assistance extended by any of the 911 operators.
The operation of a 911 emergency call system is part of the law enforcement and protection of public safety service provided by a sheriffs office and therefore constitutes a Category II function. Laskey v. Martin County Sheriffs Dep't, 708 So.2d 1013 (Fla. 4th DCA 1998); Trianon Park Condo. Ass'n v. City of Hialeah, 468 So.2d 912 (Fla.1985). Liability may be imposed only where a special relationship exists between the government actor and the tort victim. Laskey, 708 So.2d at 1014; Everton v. Willard, 468 So.2d 936 (Fla.1985).
*1064 The following elements must be pled and proved to establish a special relationship between law enforcement and the tort victim:
1) an express promise or assurance of assistance;
2) justifiable reliance on the promise or assurance of assistance; and,
3) harm suffered because of the reliance upon the express promise or assurance of assistance.
In each of the following cases, these elements were established by the evidence or material facts remained in dispute that prevented summary disposition of well-pled claims:
In Hartley v. Floyd, 512 So.2d 1022 (Fla. 1st DCA 1987), Mrs. Floyd called the police when her husband was several hours overdue returning from a two-day fishing trip with four of his friends. The deputy promised to go to the boat ramp where Floyd's vehicle and boat trailer were parked, and to notify the Coast Guard. He not only failed to do either of these promised undertakings, he told Mrs. Floyd that he had checked the boat ramp and her husband's truck was not there. In reliance on these assurances and representations, Mrs. Floyd refrained from verifying the location of the truck and trailer and calling the Coast Guard. She reasonably assumed that her husband had returned safely, trailered his boat, and was on his way home. Several hours later, Mrs. Floyd twice called the sheriffs office and was again assured that the truck and trailer were not at the boat ramp.
Finally, thirty minutes later, Mrs. Floyd called the Coast Guard. The Coast Guard determined that the truck and trailer were in fact still at the boat ramp, and immediately began their search. Approximately nine hours later, less than thirty minutes before a Coast Guard helicopter found and rescued the four survivors of their capsized boat, Floyd lost the strength to keep his head above water and to cling to the boat. The evidence thus supported the jury verdict that had the Coast Guard been timely notified, Mr. Floyd would not have drowned.
In St. George v. City of Deerfield Beach, 568 So.2d 931 (Fla. 4th DCA 1990), it was alleged that the 911 operator promised to dispatch paramedics, but failed to do so, resulting in the victim dying from gastrointestinal hemorrhaging. This court reversed a summary judgment, finding that material facts remained in dispute.
A summary judgment was also reversed by this court in Brown v. City of Delray Beach, 652 So.2d 1150 (Fla. 4th DCA 1995). It was alleged that the victim of a hit and run accident relied on the promises of the City that they would preserve and safeguard the physical evidence. In reliance on this promise, the victim's lawyer did not take independent steps to have the evidence examined by experts and their findings preserved. Instead of preserving the evidence, it was lost or discarded. The victim alleged that he had lost the ability to pursue his tort claim against the parties who caused his injuries.
Unlike the plaintiffs in each of the above-cited cases, the appellants here cannot plead any of the necessary elements of a special relationship between law enforcement and the victims of this unfortunate tragedy.
There was no express promise or assurance made by the 911 operators. The transcript reveals, at best, attempts to provide assistance.
There was no justifiable reliance on the promises or assurances of the 911 operators. Unlike the options available to Mrs. Floyd, Ms. St. George, and Mr. Brown, there was no other clear alternative that Pierre and Desir could have pursued but *1065 did not pursue in reliance on law enforcement's efforts.
AFFIRMED.
GUNTHER and WARNER, JJ., concur.
NOTES
[1] In each case, the trial court required the attachment of the transcript as an amendment to the complaint. Appellants have not challenged this requirement.