IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

ANDREA JORDAN, AS PERSONAL
REPRESENTATIVE FOR THE ESTATE
OF CHARLES E. JORDAN,

      Appellant,

 v.                                 Case No.  5D16-1245

ALVIN NIENHUIS, AS SHERIFF
OF HERNANDO COUNTY, FLORIDA,

      Appellee.

_____/

Opinion filed November 4, 2016

Appeal from the Circuit Court
for Hernando County,
Richard Tombrink, Jr., Judge.

Jeffrey D. Jensen, of Unice Salzman
Jensen, P.A., Trinity, for Appellant.

Bruce R. Bogan and Melissa J. Sydow, of
Hilyard, Bogan & Palmer, P.A., Orlando, for
Appellee.

ORFINGER, J.

      Appellant, Andrea Jordan, as personal representative of the Estate of Charles E.

Jordan ("Decedent"), filed a wrongful death action against Alvin Nienhuis, in his capacity

as Sheriff of Hernando County, Florida, based upon the alleged negligence of a 911

operator in responding to a call for medical assistance.[1]  The trial court found that the Sheriff owed no actionable duty to Decedent and dismissed Appellant's third amended complaint with prejudice.  This appeal followed.[2]

The third amended complaint alleged Decedent experienced a medical emergency, inhibiting his ability to breathe.  His wife, Annette Jordan, contacted 911 for assistance, informing the 911 operator of Decedent's breathing difficulties.  The 911 operator told Mrs. Jordan that "help was on the way," and questioned her about Decedent's condition.  When Decedent's condition worsened and he lost consciousness, ending up on the floor, the 911 operator directed Mrs. Jordan to "just leave [him] there" while awaiting further assistance from EMS.  EMS arrived at the scene and administered CPR, but Decedent ultimately died.

The third amended complaint asserted that the 911 operator negligently misled Mrs. Jordan about the seriousness of Decedent's medical emergency and induced her not to render aid to Decedent, resulting in his death.  The complaint further alleged the 911 operator was negligent in giving Mrs. Jordan instructions on how to care for Decedent, assuring her that help was on the way, and leading her to believe that there was no need to render further aid.  Appellant claimed that Mrs. Jordan relied on the 911 operator's assurances and did not explore alternative options for responding to Decedent's emergency, thereby placing Decedent in a zone of danger.  The trial court granted the Sheriff's motion to dismiss the third amended complaint with prejudice for

---

[1] The Hernando County Sheriff's Office operates and manages the 911 emergency communication system in Hernando County.

[2] The trial court did not abuse its discretion in not allowing Appellant to further amend her complaint.  We affirm as to that issue without further comment.

2

failure to state a cause of action, based on its finding that the Sheriff owed a duty of care only to the general public and not to Decedent individually and that Appellant had failed to sufficiently plead a special relationship between the 911 operator and Decedent.

A trial court's order granting a motion to dismiss with prejudice is reviewed de novo. See Wallace v. Dean, 3 So. 3d 1035, 1045 (Fla. 2009) (reviewing de novo dismissal of complaint for failure to state cause of action). We take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the pleader. Ray Coudriet Builders, Inc. v. R.K. Edwards, Inc., 157 So. 3d 484, 485 (Fla. 5th DCA 2015). However, general, vague and conclusory statements are insufficient to satisfy the requirement that a pleader allege "a short and plain statement of the ultimate facts showing the pleader is entitled to relief . . . ." Fla. R. Civ. P. 1.110(b); see Beckler v. Hoffman, 550 So. 2d 68, 70 (Fla. 5th DCA 1989).

"[F]or there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct." Trianon Park Condo. Ass'n v. City of Hialeah, 468 So. 2d 912, 917 (Fla. 1985). Governmental tort liability generally depends on the nature of the governmental function, and has been broadly divided into four categories. Category I activities include legislative, permitting, licensing, and executive officer functions; category II includes enforcement of laws and the protection of the public safety; category III concerns capital improvements and property control operations; and category IV includes providing professional, educational, and general services for the health and welfare of citizens. Id. at 919. Activities that fall within categories I and II have no underlying common law duty of care; however, liability may nevertheless be imposed when a special relationship exists

between the tort victim and the governmental actor. Id. at 919-21; see Everton v. Willard, 468 So. 2d 936, 938 (Fla. 1985). In contrast to categories I and II, there may be governmental tort liability under categories III and IV, excepting those characterized as planning or judgmental. Dean, 3 So. 3d at 104; Trianon, 468 So. 2d at 921.

"The operation of a 911 emergency call system is part of the law enforcement and protection of public safety service provided by a [sheriff's] office and therefore constitutes a Category II function." Pierre v. Jenne, 795 So. 2d 1062, 1063 (Fla. 4th DCA 2001). Thus, to impose governmental liability, Appellant was required to plead sufficient facts that, if proven, demonstrate a special relationship existed between the Sheriff and the Decedent. See id.; see also Laskey v. Martin Cty. Sheriff's Dep't, 708 So. 2d 1013, 1014 (Fla. 4th DCA 1998) (recognizing 911 emergency call system falls within category II, and rejecting assertion that because 911 service relays medical emergency calls as well as those concerning violations of law or fires, it is more closely analogous to category IV function). To establish a special relationship, Appellant was required to plead facts sufficient to show, if proven:

> 1) an express promise or assurance of assistance;
>
> 2) justifiable reliance on the promise or assurance of assistance; and,
>
> 3) harm suffered because of the reliance upon the express promise or assurance of assistance.

Pierre, 795 So. 2d at 1064.

4

The trial court correctly concluded that Appellant failed to allege facts sufficient to show the necessary elements to establish a special relationship.[3] Nonetheless, Appellant asserts that a liability exists pursuant to the undertaker's doctrine because the 911 operator increased the risk of harm to Decedent. We disagree and conclude the undertaker's doctrine is inapplicable. The undertaker's doctrine applies when government agents engage an injured party, and then either control a situation and increase the risk of harm to the injured party or induce third parties—who would have otherwise rendered aid—to forebear from doing so, thereby placing the injured party in a greater "zone of risk." Dean, 3 So. 3d at 1040.

In Dean, the Florida Supreme Court held that the plaintiff stated a claim for negligence based on the undertaker's doctrine. In that case, after responding to a call for a safety check, the sheriff's deputies gathered information from a neighbor about the subject of the call, entered the unconscious woman's home, provided an assessment of her safety, and repeatedly assured third parties that the woman was asleep and that it was unnecessary to call for an ambulance. Id. at 1043. Based on those assurances, the

---

[3] For example, a special relationship was found to exist between the decedent and the city that operated the 911 service in St. George v. City of Deerfield Beach, 568 So. 2d 931 (Fla. 4th DCA 1990), but that case is factually distinguishable. In St. George, the ex-wife called 911 to report that her ex-husband was drunk, creating a disturbance and refusing to seek medical care for a bleeding mouth. Paramedics responded, but the ex-husband refused examination or treatment. About twenty minutes after the paramedics departed, the ex-wife again called 911, saying her ex-husband's condition had worsened and that he had threatened to kill her. The 911 operator mishandled the call and failed to dispatch police or paramedics. The ex-husband died shortly thereafter from gastrointestinal hemorrhaging. The Fourth District found these facts sufficient, if proven, to create a special relationship based on the negligence of the 911 operator in failing to dispatch emergency personnel after assuring decedent's ex-wife that help was on the way. In the present case, the 911 operator did provide the promised help, apparently without delay.

neighbor did nothing more until the next day when, after finding the woman still unresponsive, she called for an ambulance. The woman ultimately died. Id. The court held that the undertaker's doctrine applied because the deputies took control of the situation and increased the risk of harm to the woman by discouraging third parties from rendering aid. As a result, the court found that the complaint stated a cause of action for wrongful death.[4] Id. at 1052.

Unlike the deputies in Dean, the 911 operator responded to Mrs. Jordan's call by gathering information on Decedent's condition and dispatching EMS to provide assistance. The 911 operator did not increase the risk of harm to Decedent or control the situation. It is not enough that a risk merely exists or that it is foreseeable. Instead, the defendant's conduct must create the risk or control the situation before liability may be imposed. Bongiorno v. Americorp, Inc., 159 So. 3d 1027, 1029-30 (Fla. 5th DCA 2015).

We affirm the trial court's order dismissing Appellant's third amended complaint with prejudice.

AFFIRMED.

EVANDER and LAMBERT, JJ., concur.

---

[4] Based on this reasoning, the Dean court found that the governmental liability involved in that case could be classified as a category IV function with a common law duty of care because the sheriff's deputies undertook to provide a well-being check on a specific individual, and did not involve the public-duty doctrine or any of its exceptions because their actions did not involve enforcement of laws or the protection of public safety. 3 So. 3d at 1048 n.22.

6