The Honorable Donald L. Hersey Supervisor of Elections Putnam County Post Office Box 977 Palatka, Florida 32078-0977
Dear Mr. Hersey:
You have asked for my opinion on the following question:
 What is the personal liability of a supervisor of elections for the conduct of his or her deputy supervisor of elections or volunteer deputy voter registrars appointed pursuant to s. 98.271, F.S.?
In sum:
 Pursuant to Title 42 U.S.C. § 1983, a supervisor of elections may not be held liable on a theory of respondeat superior or vicarious liability for actions of a deputy supervisor of elections or a volunteer deputy voter registrar as they are responsible for their own actions. However, the supervisor may be held liable for his or her own actions in inadequately selecting, training, or supervising such deputies or volunteers if a constitutional violation occurs. The exclusive remedy under s. 768.28, F.S., as amended, for damages resulting from the actions of a deputy supervisor of elections or a volunteer deputy voter registrar would be an action against the supervisor of elections. Such action would be brought against the supervisor of elections in his or her official capacity, not personally, and would not subject the supervisor to personal liability.
Your letter of inquiry contains no indication of a particular problem or concern; therefore, my comments will be general in nature.
Section 98.271, F.S., provides, in part, that:
 (1) Each supervisor of elections shall select and appoint, subject to removal by him, as many deputy supervisors as may be necessary, whose compensation shall be paid by the supervisor of elections and who shall have the same powers and whose acts shall be as effective as the acts of the supervisor; except that the supervisor of elections shall limit the power to appoint deputy supervisors and volunteer deputy voter registrars to designated deputy supervisors of elections. . . .
 (2)(a) The supervisor of elections may appoint as a volunteer deputy voter registrar, for the purpose of registering voters and accepting changes in registration, any registered elector of the state who resides in or is employed in the county, who seeks such appointment, and who completes a training session. . . .[1]
Liability under Title 42 U.S.C. § 1983
Title 42 U.S.C. § 1983 provides that "every person" who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages.[2]
The courts have been reluctant to clothe any person with immunity which would frustrate the statute's design of providing vindication to those wronged by the misuse of state power.[3]
With regard to an action against the supervisor of elections under Title 42 U.S.C. § 1983 for the actions of a deputy supervisor of elections or volunteer deputy voter registrar, a supervisory official may not be held liable under section 1983 on a respondeat superior or vicarious liability theory.[4] However, a supervisor can be held liable for his or her personal actions which may include such things as inadequate selection, training or supervision of his or her deputies or volunteers if a constitutional violation occurs.[5]
In Lloyd v. Hines,[6] a recent s. 1983 case before the First District Court of Appeal, the plaintiff/appellant alleged not that the supervisory official, a sheriff, was directly involved in his arrest, imprisonment or prosecution, but that the sheriff was aware of the illegal acts carried out by his deputies. The court held that such an allegation by itself stated a cause of action against the sheriff because actual knowledge of his deputies' unlawful actions was enough to subject the sheriff to s. 1983 liability.
The United States Supreme Court has delineated under what circumstances a municipality may be held liable under s. 1983 for failure to provide training to municipal employees which results in a constitutional deprivation to a third person. In City of Canton, Ohio v. Harris,[7] the Court held that while claims alleging such a failure to provide training are cognizable under s. 1983, liability can only be imposed where the city's failure to train "reflects deliberate indifference to the constitutional rights" of the complainant.[8] It would appear that the same test may be applied to determine the s. 1983 liability of an officer for the failure to train his or her deputies or volunteers if such failure results in a violation of the constitutional rights of a third person.
Thus, pursuant to Title 42 U.S.C. § 1983, a supervisor of elections may not be held personally liable for the actions of a deputy supervisor of elections or volunteer deputy voter registrar under a vicarious liability theory. However, he or she may be liable for inadequate selection, training, or supervision of these deputies or volunteers pursuant to s. 1983 if a constitutional violation results.
Liability under s. 768.28, F.S.
The Legislature, by enacting s. 768.28, F.S., has waived the State's immunity from tort liability to the extent provided therein. Section 768.28(1), F.S., waives sovereign immunity in tort actions against the state or its agencies or subdivisions to recover money damages for injury or loss of property, personal injury, or death caused by an employee of the agency or subdivision. Such injury or damage must have been sustained while the employee was acting within the scope of his or her office or employment and under circumstances in which the state would be liable if it were a private person.[9]
Limited immunity from civil liability in tort actions for certain officers and employees of the state or its subdivisions is provided by s. 768.28(9)(a), F.S. (1988 Supp.), as follows:
 No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. . . . The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
As used in this act, "state agencies or subdivisions" include counties.[10] Thus, no officer, employee, or agent of a county may be held personally liable in a tort action as a result of actions undertaken within the scope of his or her employment or function unless acting in bad faith, or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of a deputy supervisor of elections or a volunteer deputy voter registrar is an action against the supervisor of elections, in his or her official capacity.[11]
Such an action against a supervisor of elections does not subject the supervisor to personal liability but limits recovery to an action against the supervisor in his or her official capacity.[12]
Florida courts have recently been called upon to clarify the concept of governmental tort liability.[13] In addressing this issue The Supreme Court of Florida stated that despite the legislative intent of s. 768.28, F.S., to waive sovereign immunity on a broad basis, certain discretionary governmental functions remain immune from tort liability.[14] In order to identify those functions, the court has distinguished between "planning" and "operational" levels of decision-making by governmental agencies.[15] For use on a case-by-case basis, a test has been adopted for distinguishing between discretionary and other executive or administrative processes:
 (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?
 (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?
 (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?
 (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?[16]
If all the questions in this test can be answered yes when applied to a particular set of circumstances, then the governmental conduct is discretionary and "nontortious." If one or more questions call for a negative answer, then further inquiry is necessary. This test is intended to assist in distinguishing between the discretionary planning or judgment phase, and the operational phase of government. To subject the government to tort liability for operational phase activities, there must first be either an underlying common law or statutory duty of care in the absence of sovereign immunity. In situations where no common law or statutory duty of care exists for a private person no governmental liability exists.[17]
The Supreme Court of Florida, in Trianon Park Condominium Association, Inc. v. City of Hialeah,[18] placed governmental functions and activities into four categories: (1) legislative, permitting, licensing, and executive officer functions; (2) enforcement of laws and the protection of the public safety; (3) capital improvements and property control operations; and (4) providing professional, education, and general services for the health and welfare of the citizens.[19] The Court stated that:
 In considering governmental tort liability under these four categories, we find that there is no governmental tort liability for the action or inaction of governmental officials or employees in carrying out the discretionary governmental functions described in categories [1 and 2] because there has never been a common law duty of care with respect to these legislative, executive, and police power functions, and the statutory waiver of sovereign immunity did not create a new duty of care. On the other hand, there may be substantial governmental liability under categories [3 and 4]. This result follows because there is a common law duty of care regarding how property is maintained and operated and how professional and general services are performed. . . .[20]
Activities of the office of the supervisor of elections would appear to fall primarily within categories 1 and 2 of the Trianon test. To the extent this is the case, such activities would not subject any governmental officials or agencies to tort liability. This is so because such actions are inherent in the act of governing and the judicial branch has no authority to interfere with the conduct of those functions unless they violate constitutional or statutory provisions.[21] However, to the extent official activities undertaken by officers, employees, or agents of the office of the supervisor of elections fall outside these categories, liability may attach and an action may be brought against the supervisor under s. 768.28, F.S., in his or her official capacity.
Sincerely,
Robert A. Butterworth Attorney General
(gh)
[1] Pursuant to s. 98.271(3), F.S., the Division of Elections of the Department of State is to promulgate rules for the appointment, qualification, and training of volunteer deputy voter registrars.
[2] Imbler v. Pachtman, 424 U.S. 409, 417 (1976).
[3] Marrero v. City of Hialeah, 625 F.2d 499, 503 (5th Cir. 1980).
[4] See, Carr v. Bell, 492 F. Supp. 832, 835 (N.D.Fla., 1980); Lloyd v. Hines, 474 So.2d 376, 379 (1 D.C.A.Fla., 1985) (a supervisory official may not be held liable under s. 1983 on a respondeat superior or vicarious liability theory.)
[5] Id.
[6] Id. at note 4.
[7] 109 S.Ct. 1197 (1989).
[8] Id. at 1206.
[9] See also, s. 768.28(5), F.S. (1988 Supp.), establishing the monetary limitations of the state's waiver of sovereign immunity at $100,000 for a claim or judgment by one person or $200,000 for all claims or judgments arising out of the same incident or occurrence.
[10] Section 768.28(2), F.S., as amended by s. 55, Ch. 89-300, Laws of Florida.
[11] Section 768.28(9)(a), F.S. (1988 Supp.). And see, s.768.28(3), F.S., as amended by s. 55, Ch. 89-300, Laws of Florida, providing that an agency or subdivision may request the assistance of the Department of Insurance in the consideration, adjustment, and settlement of any claim under this section.
[12] And see, s. 111.07, F.S., which states, in part, that:
 Any agency of the state, or any county, municipality, or political subdivision of the state, is authorized to provide an attorney to defend any civil action arising from a complaint for damages or injury suffered as a result of any act or omission of action of any of its officers, employees, or agents for an act or omission arising out of and in the scope of his employment or function, unless, in the case of a tort action, the officer, employee, or agent acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Defense of such civil action includes, but is not limited to, any civil rights lawsuit seeking relief personally against the officer, employee, or agent for an act or omission under color of state law, custom, or usage, wherein it is alleged that such officer, employee, or agent has deprived another person of his rights secured under the Federal Constitution or laws. . . .
[13] See, Commercial Carrier Corporation v. Indian River County,371 So.2d 1010 (Fla. 1979) and Trianon Park Condominium Association, Inc. v. City of Hialeah, 468 So.2d 912 (Fla. 1985).
[14] 371 So.2d at 1022; 468 So.2d at 918.
[15] Id.
[16] 468 So.2d at 918.
[17] Id. at 918-919.
[18] 468 So.2d 912 (Fla. 1985).
[19] Id. at 919.
[20] Id. at 921.
[21] Id. at 919.