627 So.2d 512 (1993)
B.J.M., Appellant,
v.
The STATE of FLORIDA, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 92-1004.
District Court of Appeal of Florida, Third District.
September 28, 1993.
Rehearing Denied January 6, 1994.
*513 Karen A. Gievers, Miami, for appellant.
Dittmar & Hauser, P.A., and Helen Ann Hauser, Coconut Grove, for appellee.
Before NESBITT, JORGENSON and LEVY, JJ.
JORGENSON, Judge.
B.J.M., an abused, neglected, and abandoned child who has over time been adjudicated both dependent and delinquent, appeals from an order of summary judgment in his action against the Department of Health and Rehabilitative Services seeking mandamus and damages for negligence. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.
B.J.M. was born on December 25, 1973, and was abandoned by his parents. He has been diagnosed as borderline retarded. *514 B.J.M. was raised by an elderly woman whom he knew as his grandmother, although she denied any blood ties to him. In March, 1987, B.J.M. was adjudicated dependent on the basis of neglect and abandonment. The woman who had raised him refused to provide continuing support; another relative refused to accept responsibility for him. Upon being adjudicated dependent, H.R.S. and B.J.M. entered into a performance agreement. No relative of B.J.M. was a party to that agreement. In the agreement, the H.R.S. foster care worker agreed to "see that the child is enrolled in appropriate school setting" and "see that counseling is provided for child at the Health and Rehabilitative Services placement."
B.J.M. was placed in three foster homes. One returned him to H.R.S. custody because he had exhibited inappropriate sexual behavior and his foster parent feared for the safety of young female relatives. He apparently ran away from another home, and was ungovernable in the third. He was taken to counseling, but H.R.S. discontinued the counseling because B.J.M. refused to talk to the therapist.
In June 1989, B.J.M. was adjudicated delinquent for committing attempted arson. The juvenile court recommended placement at Hillsborough Alternative Residential Program [HARP], a facility specializing in juvenile sex offenders.[1] B.J.M. was placed at Montanari Clinical School, a residential facility, which was the placement ranked third by the court. In August, 1989, B.J.M. was adjudicated delinquent for burglary of a dwelling. Because he was already living at Montanari, the court recommended that he remain there. In the delinquency proceedings, the court appointed Christina Zawisza, an attorney with Legal Services of Greater Miami, as guardian ad litem.
While at Montanari, B.J.M. exhibited inappropriate sexual conduct and other aggressive behavior, and was assigned to the "Paisano" unit, the most restrictive environment. Although he attended classes at Montanari, he received no vocational training. Moreover, Montanari discontinued his group therapy because, in the words of his foster care worker, B.J.M. "could not be motivated to face" issues involving his sexual conduct. Thus, despite his obvious, documented psychological problems he received no therapy to address his sexual behavior. Although a referral to Grant Center had been recommended in 1987, it had never actually been made. Every two weeks B.J.M. received counseling relating to his goals and future plans; that counseling lasted, at times, only ten minutes.
Following the various judicial reviews in the dependency proceeding, the juvenile court found B.J.M.'s placement appropriate. However, the court indicated that although Montanari was not an inappropriate placement, HARP would be more appropriate. B.J.M. did not appeal any of the orders that found his placement appropriate.
In December, 1990, B.J.M., by and through Legal Services of Greater Miami, brought a mandamus action against H.R.S. in the General Jurisdiction Division of the Circuit Court seeking to compel H.R.S. to place B.J.M. in HARP.[2] B.J.M. later amended his complaint to include an action for damages for negligence, alleging that H.R.S. had failed to provide him with necessary counseling and education, had placed him inappropriately, and had failed to meet his emotional and developmental needs. H.R.S. answered, asserted various affirmative defenses, and moved for summary judgment on the grounds of sovereign immunity, collateral estoppel based on the juvenile court proceedings, lack of subject matter jurisdiction based on the juvenile proceedings, immunity based on section 39.455, Florida Statutes (1991), and Legal Services' lack of standing. The trial court granted H.R.S.' motion for summary judgment without specifying any grounds; B.J.M. appeals.

The Mandamus Action
We affirm the order of summary judgment as to the action for mandamus that *515 sought to compel H.R.S. to place B.J.M. in HARP. "In order to show entitlement to the extraordinary writ of mandamus, the petitioner must demonstrate a clear legal right on his part, an indisputable legal duty on the part of respondents, and that no other adequate remedy exists." Department of Health & Rehab. Servs. v. Hartsfield, 399 So.2d 1019, 1020 (Fla. 1st DCA 1981) (citations omitted). A writ of mandamus is not available "to command official action which involves the exercise of discretion." City of Miami Beach v. The Atheneum, Inc., 254 So.2d 41, 43 (Fla. 3d DCA 1971).
The Florida Legislature, "in its wisdom," has denied the juvenile courts any authority to place juveniles in particular facilities once they have been adjudicated dependent or delinquent, and has given H.R.S. almost total discretion in the area of placement. Pursuant to section 39.09, Florida Statutes (1989), a court could only rank alternatives presented by H.R.S. as possible placements, and could not order a specific placement. See D.M. v. State, 539 So.2d 579 (Fla. 5th DCA 1989) (trial court required to select among options presented by H.R.S.); Department of Health & Rehab. Servs. v. McGregor, 511 So.2d 1096 (Fla. 5th DCA 1987) (same). Compare M.M. v. Korda, 544 So.2d 318 (Fla. 4th DCA 1989) (even though court required to accept and rank options presented by H.R.S., court could express suggestion or opinion concerning alternative placement) and In re C.S., 573 So.2d 168 (Fla. 4th DCA 1991) (although court could express dissatisfaction with options, court could not substitute own choice of program in favor of one of three options presented by H.R.S.). Section 39.052, Florida Statutes (1991), which replaced section 39.09, likewise limits judicial input to choosing the level of restriction to be imposed, and does not allow the juvenile court to require placement in a particular facility or for a particular term. Courts have expressed their deep-rooted frustration with these limitations.
Section 39.09(3)(e), Florida Statutes (1985), which relegates juvenile judges to merely making a recommendation by ranking H.R.S. program options, is an exceedingly frustrating limitation on a conscientious judge who may believe that the alternatives listed by H.R.S. do not include an available program that is in the best interests of the child. The legislature should either give the juvenile judge's decision judicial authority or take him completely out of that decision-making process. The present statute places apparent responsibility on the judge for making a decision but does not give him authority to effectuate his best judgment. The judicial function does not include the making of "recommendations" to the executive branch of government and is degraded and frustrated by this statute which serves little or no meaningful function.
Department of Health & Rehab. Servs. v. R.S., 511 So.2d 434, 435 (Fla. 5th DCA 1987) (Cowart, J., concurring specially). See also Department of Health & Rehab. Servs. v. McGregor, 511 So.2d 1096, 1098 (Fla. 5th DCA 1987) ("The wisdom of such a system of justice may be subject to question, but no constitutional questions having been raised, we have no alternative but to enforce the law as written.") The role of the judiciary is so limited that mandamus has been issued against a judge who refused to accept and rank the options presented by H.R.S. for disposition of a delinquent child. N.L.J. v. Komanski, 527 So.2d 840 (Fla. 5th DCA 1988). We share the frustrations of the juvenile court and guardians ad litem who seek the best possible placement for the troubled youths committed to the custody of H.R.S. Nevertheless, as long as the legislature has so severely circumscribed the authority of the juvenile courts, we have no choice but to continue to recognize the almost total discretion enjoyed by H.R.S. in selecting placements, and to affirm the trial court's denial of a writ of mandamus.

The Negligence Action
Sovereign immunity bars B.J.M.'s negligence action against H.R.S. for improper placement. Decisions regarding where a dependent or delinquent child will be placed fall within the "policy-making, planning or judgmental government functions" for which government agencies remain immune from liability. Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). *516 See also Tubell v. Dade County Public Schools, 419 So.2d 388 (Fla. 3d DCA 1982) (holding that no cause of action exists for educational malpractice for improper placement in special educational program). To clarify the concept of governmental tort liability, the Florida Supreme Court placed governmental functions and activities into four categories: "(I) legislative, permitting, licensing, and executive officer functions; (II) enforcement of laws and the protection of the public safety; (III) capital improvements and property control operations; and (IV) providing professional, educational, and general services for the health and welfare of the citizens." Trianon Park Condominium v. City of Hialeah, 468 So.2d 912, 919 (Fla. 1985). Activities that fall within categories I and II do not trigger governmental tort liability because "there has never been a common law duty of care with respect to these legislative, executive, and police power functions, and the statutory waiver of sovereign immunity did not create a new duty of care." Trianon, 468 So.2d at 921. For category III and IV activities, however, substantial governmental liability may lie because "there is a common law duty of care regarding how property is maintained and operated and how professional and general services are performed." Id. To determine what type of conduct within these two categories "constitutes a discretionary planning or judgmental function and what conduct is operational for which governmental entities may be liable," the Florida Supreme Court adopted the four-question test posed in Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965). Trianon, 468 So.2d at 921. The questions are:
1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?
2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?
3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?
4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?
Trianon, 468 So.2d at 918 (quoting Commercial Carrier, 371 So.2d at 1019, and Evangelical United Brethren, 407 P.2d at 445.) If all four questions can be answered "yes," then the governmental activity is shielded by sovereign immunity; if the answer to one or more questions is "no," then the activity may subject the government to liability, "depending upon the facts and circumstances involved." Trianon, 468 So.2d at 918-19. Applying these tests, the Florida Supreme Court has held H.R.S. liable for the negligent conduct of a caseworker who failed to investigate complaints of child abuse. Department of Health & Rehab. Servs. v. Yamuni, 529 So.2d 258 (Fla. 1988). The court held that "the actions of caseworkers investigating and responding to reports of child abuse simply cannot be elevated to the level of policy-making or planning." Yamuni, 529 So.2d at 260. Pursuant to Yamuni, the supreme court also held H.R.S. liable for failing to protect an allegedly delinquent child from harm by third persons, where the risk of such harm was foreseeable. Department of Health & Rehab. Servs. v. Whaley, 574 So.2d 100 (Fla. 1991). In both Yamuni and Whaley, the agency's actions were operational, as opposed to discretionary planning level activities, and were therefore not shielded by sovereign immunity.[3]
In this case, B.J.M. has alleged that H.R.S. was negligent for placing him in an improper residential treatment facility when he was adjudicated delinquent. As earlier discussed, the Florida Legislature has vested H.R.S. with virtually unbridled discretion in deciding where a child is to be placed once he has been committed to H.R.S. custody. The exercise of such discretion draws upon the *517 basic policy-making judgment and expertise of the agency. Unlike the acts that triggered liability in Yamuni and Whaley, the agency's choice of a residential treatment facility is shielded by sovereign immunity.
Even though H.R.S. cannot be held liable for its decision to place B.J.M. in Montanari as opposed to HARP, the agency may be held accountable for its negligent treatment of B.J.M. once he was placed in Montanari. In Whaley, the Florida Supreme Court held that "[d]eciding whether to take someone into custody is a discretionary act for which sovereign immunity has not been waived. A person taken into custody, however, `is owed a common law duty of care.'" Whaley, 574 So.2d at 103 (citations omitted).
B.J.M. has alleged that he received no vocational training, and was not given any counseling or therapy to address his severe behavioral, developmental, and emotional problems.[4] The agency's alleged failure to provide necessary services to B.J.M. is operational, rather than planning-level activity, and is actionable. "Operational level acts ... are not necessary to or inherent in policy or planning, but, rather, reflect only secondary decisions for implementing discretionary plans and policies." Whaley, 574 So.2d at 103. The operational act in Whaley was the placement of the juvenile in a particular holding cell in an H.R.S. detention facility, along with a much larger, older, and violent detainee. In Yamuni, the operational act was the caseworker's failure to investigate child abuse complaints. The supreme court recognized that "all governmental functions, no matter how seemingly ministerial, can be characterized as embracing the exercise of some discretion in the manner of their performance." Yamuni, 529 So.2d at 260 (citations omitted). Nevertheless, "the HRS child abuse role is to provide professional, educational, and general services for the health and welfare of citizens. These activities fall within category IV of Trianon for which there is a waiver of immunity and a duty of care." Id., at 261. Likewise, in this case B.J.M. was owed a duty of care; genuine issues of material fact remain as to whether that duty was breached, and if so, whether that breach was the proximate cause of B.J.M.'s damages. See Whaley, 574 So.2d at 103-104 ("To find that a custodian breached the duty of reasonable care, a plaintiff must show the injury to have been a reasonably foreseeable consequence of the custodian's negligence.").[5] Accordingly, the entry of summary judgment on the claims for lack of proper care on the ground of sovereign immunity was error.

Collateral Estoppel; Subject Matter Jurisdiction
Collateral estoppel does not bar B.J.M.'s action for damages. H.R.S. argues that the issues raised in this case were, or could have been raised in the juvenile court proceedings, and that B.J.M.'s failure to appeal any of the placement orders prohibits him from now asserting that those orders were erroneously entered or that H.R.S. breached a duty of care to him.
"[C]ollateral estoppel precludes the relitigation of issues actually adjudicated" in a prior proceeding. Hochstadt v. Orange Broadcast, 588 So.2d 51, 52 n. 1 (Fla. 3d DCA 1991) (citation omitted). The prior judicial reviews of B.J.M.'s placement did not determine whether H.R.S. had breached a duty of care to B.J.M.; the orders indicate that the court merely noted, with some reluctance, that the placements were not inappropriate. The parties never litigated before the juvenile court the issue of whether *518 H.R.S. breached a duty of care once it placed B.J.M. in Montanari.
The General Jurisdiction Division of the Circuit Court has subject matter jurisdiction over the negligence action. The Juvenile Division of the Circuit Court could not have entertained such an action, as its exercise of jurisdiction is severely circumscribed by statute. See § 39.054 (powers of disposition in delinquency proceedings) and § 39.442 (powers of disposition in dependency proceedings), Fla. Stat. (1991). To bar the action in the General Jurisdiction Division would leave B.J.M. with no forum and no remedy for the neglect and negligence he has suffered at the hands of H.R.S.

Statutory Immunity
Section 39.455, Florida Statutes (1991) does not bar the negligence action against H.R.S. That section provides that:
(1) In no case shall employees or agents of the social service agency acting in good faith be liable for damages as a result of failing to provide services agreed to under the performance agreement or permanent placement plan unless the failure to provide such services occurs as a result of bad faith or malicious purpose or occurs in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
(2) The inability or failure of the social service agency or the employees or agents of the social service agency to provide the services agreed to under the performance agreement or permanent placement plan shall not render the state or the social service agency liable for damages unless such failure to provide services occurs in a manner exhibiting wanton or willful disregard of human rights, safety, or property.
B.J.M.'s negligence action is not based on the agency's failure to comply with its performance agreement, but rather on its failure to comply with the general legislative mandate to "assure to all children brought to the attention of the courts, either as a result of their misconduct or because of neglect or mistreatment by those responsible for their care, the care, guidance, and control ... which will best serve the moral, emotional, mental, and physical welfare of the child and the best interests of the state." § 39.001(2)(d), Fla. Stat. (1991). B.J.M. has alleged that H.R.S. breached its duty of care to him by failing to provide basic education and counseling. The record on appeal, although sparse, indicates that this young man has spent the past four and one-half years languishing in a state-sanctioned warehouse for troubled youths, and has been denied the training and psychological treatment he desperately requires.
Moreover, even if B.J.M.'s action were viewed as a claim that H.R.S. failed to comply with its amorphous performance agreement to "see that the child is enrolled in appropriate school setting" and to "see that counseling is provided for child at the Health and Rehabilitative Services placement," section 39.455 does not absolutely bar the suit. The statutory grant of immunity for failure to provide agreed-to services allows an action for damages to be maintained if the failure to provide those services was a result of bad faith or malice, or if H.R.S. exhibited "wanton and willful disregard of human rights, safety, or property." The statute thus sets a high standard of proof for such cases, but does not ban them outright. As we noted earlier in this opinion, the record on appeal does not reveal the extent of the alleged breach of duty. Therefore, if this action is viewed as a claim for damages for H.R.S.' failure to comply with its performance agreement, genuine issues of material fact remain regarding whether B.J.M.'s proof attains the level required by section 39.455, and entry of summary judgment was error.
For all of the foregoing reasons, we affirm the order of summary judgment as it relates to the denial of mandamus and the action for negligence for improper placement; we reverse the order of final summary judgment relating to the remaining aspects of the negligence action and remand for further proceedings *519 consistent with this opinion.[6]
LEVY, J., concurs.
NESBITT, Judge (concurring and dissenting):
I concur in affirmance of the summary judgment as it relates to the denial of mandamus. I dissent with the court's determination that the amended complaint states a cause of action in ordinary negligence. I agree with the court that reversal of the juvenile's statutory claim, pursuant to section 39.455(2), Florida Statutes (1991), is required but would only do so with leave to amend.
In the present case, it is undisputed, as the majority recognizes, that HRS was providing services to B.J.M. pursuant to a permanent placement plan established by court order authorized by section 39.452, Florida Statutes (1991). For this reason, the majority's reliance upon Department of Health & Rehab. Servs. v. Yamuni, 529 So.2d 258 (Fla. 1988) (HRS's negligent failure to accept an abused child to intake) and Department of Health & Rehab. Servs. v. Whaley, 574 So.2d 100 (Fla. 1991) (confinement immediately upon intake of a fourteen-year-old with a depraved person) are not material to the instant analysis because in both cases the negligent conduct occurred before a permanent placement plan was in operation. Where, as here, a permanent placement plan was in effect, the duty of HRS can only arise from section 39.455(2), Florida Statutes (1991). That section provides:
The inability or failure of the social service agency or the employees or agents of the social service agency to provide the services agreed to under the performance agreement or permanent placement plan shall not render the state or the social service agency liable for damages unless such failure to provide services occurs in a manner exhibiting wanton or willful disregard of human rights, safety, or property. However, if the failure to provide the services occurs in a manner exhibiting wanton or willful disregard of human rights, safety, or property, a cognizable statutory claim will lie.
The reading of this section confirms that much broader immunity has been conferred upon HRS, its agents, servants, and employees than is otherwise conferred by the general waiver of immunity contained in section 768.28, Florida Statutes (1991). Obviously, section 39.455, being more restrictive than the general waiver of immunity, precludes an action for ordinary negligence. However, the failure to render services if done in a wanton and willful manner, as described, and a cause of action for money damages against HRS, its agents, servants, and employees under an elevated standard, is clearly cognizable.
I conclude that under the instant circumstances the case should be reversed and leave to amend be granted. Here, since the instant amended complaint alleges only HRS's negligent failure to comply with its duty, the present pleading is inadequate. However, counsel for the appellant, effectively argues that because the rather extensive record before us demonstrates that HRS essentially did nothing to improve the condition of this juvenile, the appellant has the ability to state a claim. See Henry P. Trawick's Florida Practice & Procedure (1991 Ed.), § 6-17.5 at 93; City Gas Co. v. Miller Gas Co., 137 So.2d 836, 837 (Fla. 3d DCA 1962) (in pleading a statutory cause of action, it is generally sufficient to track the language of the statute and allege sufficient facts to show that the statute is activated). Accordingly, because the record here shows the ability to state a cause of action under section 39.455, and because, in my view, it is premature to decide the affirmative defenses raised by HRS, I would reverse with leave to amend.
NOTES
[1] Throughout the record there are references to B.J.M. as a juvenile sex offender, and indications that he was both victim and victimizer.
[2] Contrary to H.R.S.' position, we find nothing improper about Legal Services' role as guardian ad litem in this litigation.
[3] For a discussion of governmental tort immunity in Florida, see generally Gerald T. Wetherington & Donald I. Pollock, Tort Suit Against Governmental Entities in Florida, 44 Fla.L.Rev. 1 (1992).
[4] Although the parties have described the discovery conducted thus far as "voluminous," the record on appeal is rather sparse. In his deposition, the well-meaning but overworked foster care worker shows an appalling lack of knowledge of B.J.M.'s care and treatment. There are no reports or evaluations in the record from Montanari or from any psychologist or psychiatrist who has treated B.J.M., and we are thus unable to determine the full extent of the breach of duty alleged.
[5] At the very least, B.J.M. is entitled to proceed with the proof of his claims, as "[i]t requires minute examination of the alleged negligent actions of the government unit to determine if they are operational or planning level as each case comes to court." Yamuni, 529 So.2d at 260.
[6] Because this case presents an issue of great public importance, we certify the following question to the Florida Supreme Court:

Whether an adjudicated dependent juvenile may maintain an ordinary negligence claim against the Department of Health and Rehabilitative Services for the latter's alleged failure to provide the juvenile with services?